PETER A. LE COUTEULX, Appellant, v. THE CITY OF BUFFALO, Respondent.

A corporation is not limited to the exercise of the powers specifically granted, but possesses, in addition, all such powers as are either necessarily incident to those specified, or essential to the purposes and objects of its corporate existence.

The common council of the city of Buffalo have full and ample power to take and hold any property transferred to them for the use of common schools in said city.

By the term "common schools," is to be understood such schools as are common or open to all, in a certain locality. Per DAVIES, J.

Prior to 1851, the defendant had power, under the laws of the State, to establish and maintain free schools within its limits, and could legally take and hold real estate for such purpose.

*A. P. Nichols*, for the appellant.

*Harmon S. Cutting*, for the respondent.

DAVIES, J.   This action was brought to recover the possession of a certain lot of land in the city of Buffalo in possession of, and the title to which is claimed by, the defendant.   It is averred in the complaint that Louis Le Couteulx, being the owner of the real estate in controversy, made and executed on the 30th day of May, 1838, under his hand and seal, a deed for the same, reciting that the party of the first part, with a view of aiding in the establishment of an institution where the children of those who are unable or unwilling to provide for their education may receive the same free of expense, and also in consideration of one dollar, thereby granted and conveyed the said premises to the said party of the second part and its assigns, for the uses and purposes therein mentioned forever.   It was declared in said deed that the said premises thereby conveyed were to be held and appropriated by said city for the use, maintenance and support of a "free school," and for no other purpose.   It was further averred that said Louis Le Couteulx died in the month of November, 1840, having previously made his last will and testament, whereby he devised and bequeathed to

this plaintiff in fee simple the said premises. That the defendant never took or entered into the possession of the said premises until some time in the year 1857, when the said defendant took possession thereof under said deed, at which time the defendant inclosed said premises and erected a building thereon for the use, maintenance and support of a free school, and that said defendant has ever since occupied said premises for the use, maintenance and support of a free school, and now is in the possession of said premises for such purpose, and claims title thereto under such instrument in writing and not otherwise. The plaintiff claimed title to said premises, and demanded the possession thereof.

To this complaint the defendant demurred, and the Superior Court of Buffalo gave judgment for the defendant, and the plaintiff now appeals to this court. The defendant was incorporated by an act of the legislature passed in 1832. (Laws of 1832, ch. 179.) The second section of the act authorized the corporation to take, hold, purchase and convey such real estate as the purposes of the corporation might require. The charter of the city was amended by an act passed in 1837. (Laws of 1837, ch. 392.)

By the eleventh section of this act, the mayor and aldermen who, by the charter of 1832, composed the common council of said city, were constituted commissioners of schools in and for said city, and the common council were authorized to perform all the duties of such commissioners, and should possess all the rights, powers and authority of commissioners of common schools, in the several towns of this State. All moneys raised in said city, under the laws of the State for the support of common schools, were to be expended by and under the direction of said common council, and said common council had given to them the same powers as were given by law to the towns of this State, to raise additional moneys for the support of common schools in said city. And the school moneys distributed by the State as part of the common school fund thereof, to said city, were also to be expended by the common council of said city, for the support of the common schools therein.

The commissioners of common schools in each town of the State, have the powers and privileges of a corporation, so far as to enable them to take and hold property transferred to them for the use of common schools in said towns. (1 R. S., 474, § 42.)

The powers of the common council of Buffalo in relation to common schools in said city were greatly enlarged by an act further to amend the charter of said city, passed March 12, 1838. (Laws of 1838, ch. 63.) By the 1st subd. of sec. 16 of this act, the common council is empowered to designate and purchase or lease in each school district, a site or sites for the school house or school houses therein, and to improve the same, as to them shall seem suitable and proper.

2. To build and erect on such site or sites, or on any lot owned by such district, such school house or school houses as to them shall appear suitable and sufficient for such districts.

3. To complete, improve, enlarge or repair any such school house or school houses.

4. To raise by tax from time to time, such sums as they may deem necessary for the purposes specified in such section. The charter of said city was further amended by an act passed February 24, 1839 (Laws of 1839, ch. 24), and the 22d section of said act declares, that thereafter all the district schools organized within the city of Buffalo shall be public and free to all children residing within said district under the age of sixteen years, and the said common council were authorized to levy and collect by tax sufficient moneys to pay the expenses of such schools.

By an act of the legislature passed April 12, 1851, entitled "An act to establish Free Schools throughout the State" (Laws of 1851, ch. 151), it is declared that common schools in the several school districts of this State shall be free to all persons residing in the district, over five and under twenty-one years of age.

We thus see that the entire system of public education at the public expense within the city of Buffalo, was committed to the control of the corporation thereof. The education of

the children residing within that city became one of the purposes and objects for the organization of that government, and for which it was instituted and maintained. By its fundamental law, it was authorized to take, hold, purchase and convey such real estate as the purposes of the corporation might require. This is but a reiteration of the provision of the Revised Statutes applicable to all corporations. (1 R. S., 509, § 1.) A corporation is not limited to the exercise of the powers specifically granted, but possesses, in addition, all such powers as are either necessarily incident to those specified, or essential to the purposes and objects of its corporate existence. A municipal corporation, therefore, may at common law, unless restrained by some statute, purchase and hold all such real estate as may be necessary to the proper exercise of any power specifically conferred, or essential to those purposes of municipal government for which it was created. (*Ketchum* v. *City of Buffalo*, 4 Kern., 356.) In this case it was held by this court that an authority conferred upon this defendant "to establish and regulate markets," authorized a purchase by the common council of Buffalo upon credit, of a site, whereon to erect and establish a market. It was pertinently said, "without the power to procure a suitable place, the first step could not be taken towards the establishment or foundation of a market. The power to establish, therefore, must of necessity include that of procuring the requisite site." But in the present instance we are not driven to an inferential derivation of the power. It is conferred in express terms by the act of 1837, which conferred upon the common council of Buffalo all the rights, powers and authority of commissioners of common schools of the several towns of this State, and we have seen that among the powers and authority conferred by law upon such commissioners, was the power to take and hold any property transferred to them for the use of common schools in such town. In addition to this power to take and hold any property transferred to them for the purposes aforesaid, the act of 1838, in express terms, authorized the common council to purchase or lease a site or sites

for any school house, and to build and erect school houses thereon.

The common council had, therefore, prior to the conveyance by the plaintiff's ancestor, full and ample power to take and hold any property transferred to them for the use of common schools in said city, or to purchase ground and to erect thereon suitable buildings for the education of the children in said city. What are we to understand by the language " common schools ?" Unquestionably, that the schools are common, or open to all, in a certain locality. In this sense, common schools of this State have always been free schools. But it must be conceded that the general understanding and the provisions of law confirm this, that the common schools, in one sense, were not free, that is that scholars attending them could not do so free of all charge and expense. Prior to 1851, the common schools of the State, in this particular, could not be said to be free. But the defendant had power and authority to raise, by tax, such sums as it might deem necessary to maintain schools in the city of Buffalo, and to purchase sites therefor, and erect buildings thereon, except the wages of teachers. To defray the wages of the teachers in the several schools of said city, it could apply the amount received from the common school fund of the State, and also collect and levy, by tax, four times that amount in addition thereto. It is not averred or alleged in the complaint, that these various sums were not adequate to the entire expense of maintaining the schools, and if so, then the schools in Buffalo, under the charge and management of the defendant, were in every and all senses free. This certainly was the understanding of the legislature when it subsequently declared, by the act of 1839, that thereafter all the district schools organized within the city of Buffalo, should be public and free.

It is plain, therefore, that the defendant had the power to establish and maintain a free school or schools within the city of Buffalo, in the largest sense, and was expressly authorized to take and hold property for that purpose. It is immaterial to the present inquiry, which is one of power alone in the defendant to take under the deed, whether the sum raised by the

defendant was sufficient to employ the most desirable number of teachers, or to provide for the largest number of scholars, or to put the schools upon the most efficient and perfect footing. There is no restriction, in the conveyance, of the time within which the school was to be organized and put in operation, the number of teachers to be employed, the studies to be pursued, or the number of scholars in attendance. All these matters were left to the discretion of the defendant. Neither is there any complaint on these points by the present plaintiff, or that the property has been diverted to any other use or purpose, than was originally intended by the deed. On the contrary, it is expressly averred in the complaint that the defendant had inclosed said premises and erected a building thereon, for the use, maintenance and support of a free school, and that the defendant, ever since it took possession of said premises, under said deed, had occupied the same for the use, maintenance and support of a free school. It is, therefore, of no moment, whether the defendant exercised, to the full extent, its discretion to raise such an amount of money as would be sufficient in all events, to maintain a free school, and pay and discharge all the expenses therefor. For an abuse, or neglect to exercise the powers vested in it, in this regard, other remedies are to be invoked, and this plaintiff, upon this record, is not in the position to avail himself of any such grounds to avoid his ancestor's deed. Being clearly of the opinion that the defendant had full power and authority to establish and maintain free schools within the city of Buffalo, it follows it was authorized, either to purchase or to take and hold any property necessary for that purpose, and that the deed from the plaintiff's ancestor conveyed the title to the premises in question, and nothing has been alleged or appears to divest the defendant of the title thereto.

The judgment appealed from should therefore be affirmed, with costs.

DAVIS, J. The premises sought to be recovered in this action were conveyed by Louis Le Couteulx, the plaintiff's devisor, to the city of Buffalo, on the 30th day of May, 1838,

for certain specific and clearly expressed purposes. The language of the deed is, "*the said premises hereby conveyed to be held and appropriated by said city for the use, maintenance and support of a 'free school, and for no other purpose.'*"

The ground on which the plaintiff claims to recover is, that the city of Buffalo, at the time of the conveyance, had no lawful power to establish and maintain a "free school," and therefore could not take title to lands for the purposes indicated by the deed. There is no question but that the city in its corporate capacity had power to establish and maintain schools under the common school system of the State, to be supported in the manner prescribed by the several acts of the legislature creating that system; and one ground of the decision of the court below is, that the schools organized under that system are free to all persons and classes of community inhabiting the several districts, and are therefore "free schools" within the meaning of that term as used by the grant. This position, in my judgment, cannot be maintained. The language of the grant, it is true, is to be construed most strictly against the grantor; but when a particular term or phrase is used as descriptive of the special object or purpose of the grant, and there are other portions of the instrument clearly indicating the sense in which it is used, it would do violence both to the letter and intent of the conveyance to pervert the term or phrase to any other sense. That is precisely this case. The grantor recites as the real consideration of the conveyance, "that the said party of the first part, with a view of aiding in the establishment of an institution where the children of those who are unable or unwilling to provide for their education, may receive the same free of expense," has given, remised, &c., the premises described, "for the use, maintenance and support of a free school, and for no other purpose." This language shows, beyond doubt, that the term "free school" is not used in the sense in which it may be considered descriptive of our "common schools," under the then existing system of the State, that is, *free* in respect to the universal admissibility of

the children of all classes of inhabitants of districts, but to indicate a school which should be free in a pecuniary sense, and in respect to the expenses or charges for tuition to be bestowed therein.

It is essential, therefore, to the validity of the conveyance in question, to establish that the city of Buffalo could, at the time of receiving the conveyance, lawfully maintain a common school where education might be received by those entitled to attend it, free of any charge or expense specifically for tuition therein. This was the purpose which the grantor had in view, and it was solely to accomplish that end, and to induce the city to adopt and pursue it, that his beneficence was exercised.

The city was incorporated in 1832. Power was given to it by its charter to " take, hold, purchase and convey such real and personal estate as the purposes of the corporation might require." (Laws of 1832, p. 297, § 2.)

By the Laws of 1837, the common council of the city of Buffalo were made commissioners of common schools, in respect to the common schools in said city, with all the rights, powers and authority possessed by such commissioners in the several towns of the State, and it was made their duty to levy and raise the moneys required by law to be raised by tax, for the support of common schools in said city; and the proportion of the annual distribution of the common school fund of the State, belonging to the schools of said city, was to be paid to the treasurer of said city. (Laws of 1837, p. 438, §§ 11, 12.)

These powers of the city, in respect to schools, were increased by the act of March, 1838 (Laws of 1838, p. 40, §§ 16, 18, 20), and the common council were clothed with plenary power to divide the city into districts; to purchase or lease sites for, and erect school houses and keep them in repair; to supply them with books, furniture, appendages, and school apparatus, and to raise by tax upon the taxable property in the districts, from time to time, such sums as they might deem necessary for those purposes. And they were also empowered to raise, annually, for the support of

common schools in said city, by tax upon the taxable property in said city, such sums as they might deem proper, not less than twice nor more than four times the amount of that portion of the annual distribution of the common school fund apportioned to the city. They were also invested with the entire control and management of the common schools of said city, and authorized to make such by-laws and ordinances as they might deem necessary for the good order and government of the same. These became a part of the corporate powers and duties of the city, and the authorities were as much bound to use them for the public benefit and advantage, as any other portion of the powers conferred by its charter. It was at this point of time, and doubtless with a view to this state of facts, that the liberal and public spirited grant in question was made, probably with intent on the part of the donor, to induce the city to attempt the experiment of a common school in every sense free, and which might lead to the universal establishment of such schools in that city, which followed so rapidly upon his generous action. (Sess. Laws of 1839, ch. 24, § 22.)

Under the powers of the corporation as they existed at the time the conveyance was made, I see no reason why the city might not have used the premises conveyed, for the purpose indicated by the grant. By applying to that object so much of the moneys received from the State appropriation, and of the tax authorized to be raised and added thereto, as should belong to the district existing or to be created, and regulating the continuance of the school, the number and wages of the teachers, and other expenses, as the circumstances might require, they could, without any infringement of law, have kept up a school in which no necessity for collecting tuition fees or charges, by rate bills, could arise. It is to be observed that rate bills, under the law, were to be resorted to *only* when the funds above referred to proved insufficient to pay the wages of teachers. The superintendent of common schools of the city was by law required to pay the wages of teachers in each district, "out of the moneys in his hands distributed to such district by the common council as com-

missioners of common schools, so far as such moneys may be sufficient for that purpose, and to collect the residue " from persons liable therefor, by rate bill, in the mode provided. (Sess. Laws 1837, ch. 392, § 23.) Whenever those moneys were sufficient, nothing was to be collected, and the school would be free, in a pecuniary and every other sense. Under the very general powers lodged in the common council, there would have been no difficulty in so regulating the school to which the use or income of the lands conveyed by Mr. Le Couteulx should be appropriated, that it would be a free school in the sense that all education given in it would be wholly gratuitous; and I think this was the very thing that gentleman desired to bring about and to aid.

The corporation having authority to carry out the object of the conveyance, were unquestionably authorized, under their power to hold real estate, to take the title by gift. (4 Kent Com., 374; 2 Black., 241; 5 Cow., 509.)

It follows that the conveyance to the city was a valid one and that the judgment below should be affirmed.

DENIO, Ch. J., was for affirmance, on the ground of a charitable use; CAMPBELL, J., on that ground, and also on the ground of the opinions; POTTER, J., also on both grounds; WRIGHT and PORTER, JJ., on the ground stated in the opinions.

Judgment affirmed.