## THE VILLAGE OF CARTHAGE, Respondent, *v.* CARLOS L. FREDERICK, Appellant.

A municipal corporation possesses not only the powers specifically conferred upon it by its charter, but also such as are necessarily incident to, or may be fairly implied from those powers, including all that are essential to the declared object of its existence.

An ordinance adopted by such a corporation pursuant to authority delegated by the legislature has the same force within the corporate limits as a statute passed by the legislature itself.

*It seems,* where the power to legislate is general or implied, and the manner of exercising it is not specified there must be a reasonable use of such power.

Plaintiff's trustees are authorized by its charter to enact ordinances, among other things, to prevent incumbering the sidewalks with any substance or material whatever; to provide for keeping them clear from snow, ice, dirt and other obstructions; to direct the sweeping and cleaning of streets by the persons owning or occupying the premises fronting thereon "and generally the said trustees" are empowered to pass such ordinances "not inconsistent with the laws of the United States and of this state as may be necessary and proper for carrying into effect the purposes of said corporation, and the powers and privileges granted" by said act, and not inconsistent therewith; "and for the enforcement of such by-laws, ordinances, rules and regulations," they are authorized to prescribe penalties for violations thereof. (Chap. 834, Laws of 1869). Said trustees passed an ordinance declaring it to be unlawful for persons owning, occupying or having charge of any premises within the village to allow snow, ice, or other substance to collect and remain on any sidewalk fronting on, or belonging to, said premises so as to impede, obstruct, or render dangerous, public travel upon such walks later than 10 A. M., after it had fallen or collected thereon, or for more than two hours after having been notified by the village authorities to remove the same. In an action to recover the penalty prescribed by the ordinance for a violation thereof, *held,* that the trustees had power under the charter to pass the ordinance; that it did not conflict with the constitutional provision prohibiting the taking of private property for public use without just compensation (State Const. art. 1, § 6); but that it was a proper exercise of police power; and so, that plaintiff was entitled to recover. *Gridley* v. *City of Bloomington* (88 Ill. 554), disapproved.

The authorities upon the question as to what is a proper exercise of police power collated.

(Submitted June 25, 1890; decided October 7, 1890.)

APPEAL from judgment of the General Term·of the Supreme Court in the fourth judicial department, entered upon an order made January 11, 1887, which affirmed a judgment of the County Court of Jefferson county in favor of plaintiff, which affirmed a judgment rendered in the Police Court of the village of Carthage.

This action was brought to recover a penalty from the defendant for violating a municipal ordinance of the village of Carthage of which the following is a copy, viz. :

" § 29.  It shall not be lawful for any owner, occupant, tenant, or any person having the charge or control of any premises, lot, tenement, or manufacturing establishment, situated within the village of Carthage, to suffer or permit any snow, ice, or other substance, to collect and remain on any sidewalk fronting on or belonging to said premises so as to impede, obstruct, or render dangerous, public travel upon such walks later than 10 o'clock in the forenoon of any day after the same shall have fallen or collected thereon, or for more than two hours after being notified by the president or any of the trustees of said village to remove the same.  Any person or persons offending against the provisions of this act shall be liable to pay a fine of not less than one dollar and not to exceed ten dollars for each and every offense, to be sued for and collected the same as other penalties, with costs of suit."

Upon the trial it appeared that this ordinance had been duly passed by the board of trustees, and posted and published as required by law ; that on the 13th of February, 1885, the defendant violated the same by suffering and permitting snow to collect and remain upon the sidewalk in front of the premises occupied by him within said village to the depth of from one to two feet until after ten o'clock in the forenoon of that day, and that public travel over said walk was thereby impeded, obstructed and rendered dangerous.

Further facts are stated in the opinion.

*Kilby & Kellogg* for appellant.  The ordinance in question is unconstitutional, in that it assumes to authorize the taking

of private property for public use, without just compensation. (Const. of N. Y. art. 1, §§ 6, 7; *People* v. *Mayor, etc.*, 4 N. Y. 419; *City of Chicago* v. *O'Brien*, 111 Ill. 532; *B. C. Cemetery* v. *City of Buffalo*, 46 N. Y. 506; *Gridley* v. *City of Bloomington*, 88 Ill. 554; 16 Pick. 504; Const. State of Ill. art. 13, § 2.) The ordinance in question cannot be sustained under the police powers of the state. (*In re Jacobs*, 98 N. Y. 98, 110; *Grindley* v. *City of Bloomington*, 88 Ill. 554; *City of Chicago* v. *O'Brien*, 111 Ill. 532; Dwarris on Stat. 44; 2 Kent, 338.) The working of the ordinance will not warrant this action. (*Kinder* v. *Gillespie*, 63 Ill. 88; *Case* v. *Hall*, 21 id. 632; Potter's Dwarris on Stat. 245, 247; *Andrews* v. *U. S.*, 2 Story, 203; *Stimson* v. *Pond*, 2 Curt. 502; *U. S.* v. *Ten Cases of Shawls*, 2 Paige, 162.) The summons was defective and invalid. The court erred in admitting in evidence the book of minutes of the board of trustees. (Code Civ. Pro. § 941.)

*Watson M. Rogers* for respondent. The charter of the village of Carthage is sufficiently broad to authorize the making of the ordinance complained of. (*People* v. *Mattimore*, 45 Hun, 448; *Mayor, etc.*, v. *Williams*, 15 N. Y. 502, 505; Laws of 1869, chap. 834; *McDermott* v. *Board of Police*, 5 Abb. Pr. 422; *Tanner* v. *Trustees of Albion*, 5 Hill, 121; *People ex rel.* v. *Special Sessions*, 7 Hun, 214; *Polinsky* v. *People*, 73 N. Y. 65; *Cronin* v. *People*, 82 id. 318.) This ordinance, and the charter giving authority for its creation, cannot be successfully assailed as violating the provision of the Constitution " that private property shall not be taken for public use without just compensation." (Const. art. 1, § 6; *Harrowen* v. *Ritson*, 37 Barb. 303; *King* v. *Wright*, 3 B. & Ad. 681; *People* v. *Gilson*, 109 N. Y. 397; *Haskell* v. *Penn Yan*, 5 Lans. 43; *B. Cemetery* v. *Buffalo*, 46 N. Y. 506; 2 R. S. [8th ed.] 1367, §§ 38, 40; *Rice* v. *Milks*, 7 Barb. 339; *Dixon* v. *B. R. R. Co.*, 100 N. Y. 176; *Taylor* v. *City of Yonkers*, 105 id. 205; 16 Pick. 504; 45 Hun, 448.) The power of taxation and police regulation of the legislature,

both direct and through the medium of authority delegated to cities and villages, is illustrated in many cases. (*In re Lowden*, 89 N. Y. 548; *In re Ryers*, 72 id. 1; *Worts* v. *Hoagland*, 114 U. S. 606; *Town of Guilford* v. *Bd. Suprs.*, 13 N. Y. 143; *In re McPherson*, 104 id. 306; *Hersey* v. *Porter*, 100 id. 403; *Buffalo* v. *Webster*, 10 Wend. 100; *Cronin* v. *People*, 82 N. Y. 318; *People* v. *Arensberg*, 105 id. 123; *People* v. *West*, 106 id. 293; *Soon Hing* v. *Crowley*, 113 U. S. 703.)

VANN, J.   A municipal corporation possesses not only the powers specifically conferred upon it by its charter, but also such as are necessarily incident to, or may fairly be implied from, those powers, including all that are essential to the declared object of its existence. (*Le Couteulx* v. *City of Buffalo*, 33 N. Y. 333; *Ketchum* v. *City of Buffalo*, 14 id. 356; *R. & N. F. R. R. Co.* v. *City of Buffalo*, 5 Hill, 209; 1 Dillon on Mun. Corp. § 89; Angell & Ames on Corp. 346, 364; 2 Kyd on Corp. 149.)

An ordinance adopted by such a corporation, pursuant to authority expressly delegated by the legislature, has the same force within the corporate limits as a statute passed by the legislature itself. (*Village of Gloversville* v. *Howell*, 70 N. Y. 287; *City of Brooklyn* v. *Breslin*, 57 id. 591, 596; *Corporation of the Brick Presbyterian Church* v. *Mayor, etc., of New York*, 5 Cow. 538, 541; *McDermott* v. *Bd. of Police*, 5 Abb. Pr. 422; Grant on Corp. 77.) Where, however, the power to legislate is general or implied, and the manner of exercising it is not specified, there must be a reasonable use of such power, or the ordinance may be declared invalid by the courts. (*Dunham* v. *Trustees of Rochester*, 5 Cow. 462; *Cronin* v. *People*, 82 N. Y. 318; *Comrs. of North Liberties* v. *N. L. Gas Co.*, 12 Penn. St. 318; *Mayor, etc.,* v. *Thorne*, 7 Paige, 261; *In re Frazer*, 63 Mich. 396; *Town of State Center* v. *Barenstein*, 66 Iowa, 249; *City of Mankato* v. *Fowler*, 32 Minn. 364; *City of Clinton* v. *Phillips*, 58 Ill. 102; 1 Dillon on Mun. Corp. § 328; Cooley on Const. Lim. 243.)

The trustees of the village of Carthage were authorized by the act of incorporation to enact ordinances for various purposes and, among others, to prevent incumbering the sidewalks with any substance or material whatever; to provide for keeping them clear from snow, ice, dirt and other obstructions; to direct the sweeping and cleaning of streets in said village by the persons owning or occupying the premises fronting thereon; "and generally the said trustees" were empowered to pass such ordinances, "not inconsistent with the laws of the United States and of this State, as may be necessary and proper for carrying into effect the purposes of said corporation, and the powers and privileges granted" by said act and not inconsistent therewith, "and for the enforcement of such by-laws, ordinances, rules and regulations." They were also authorized to prescribe such penalties as they should deem proper for a violation thereof, not exceeding $100 for each offense. (Laws of 1869, chap. 834, 1975–1978.) By a later act, exclusive jurisdiction was conferred upon the police justice of the village in all actions brought to recover fines or penalties for a violation of the charter or of the ordinances passed thereunder. (Laws of 1872, chap. 564, 1372.)

We think that the special grant of power to enact ordinances to prevent incumbrances upon the sidewalks and to provide for keeping them free from snow, when considered in connection with the general grant of power to pass all such ordinances as are necessary for carrying into effect the purposes of the corporation and the powers conferred by the charter, is sufficient to authorize the adoption of the ordinance in question. It is fair, impartial and general, is consistent with the general legislation of the state, and is a reasonable exercise of the powers conferred by the legislature. (*Mayor, etc.,* v. *Williams,* 15 N. Y. 502; *People* v. *Mattimore,* 45 Hun, 448.)

The defendant, however, insists that said ordinance is unconstitutional because it assumes to authorize the taking of private property for public use without just compensation. (Const. St. of N. Y. art. 1, § 6.)

It is made the duty of the legislature, by the Constitution now in force, to provide for the organization of cities and villages, but, as a recent writer has said: "The right of the legislature, in the entire absence of authorization or prohibition, to create towns and other inferior municipal organizations and to confer upon them the powers of local government, and especially of local taxation and police regulation usual with such corporations, would always pass unchallenged." (Cooley on Const. Lim. [5th ed.] 228.) During the early history of the state, when the Constitution was silent upon the subject, cities and villages were incorporated by the legislature, and extensive powers of local legislation were conferred upon them, including the right to pass by-laws or ordinances, to inflict fines and penalties for their violation and to collect the same through the courts. (Laws of 1785, chap. 83; Laws of 1790, chap. 49; Laws of 1794, chap. 36.) As early as 1785, by the charter of the city of Hudson, the right to legislate in regard to the "police" power was expressly conferred. (Laws of 1785, chap. 83, § 11.) This power was then well known to the common law, and, twenty years before, had been defined by Blackstone as "the due regulation and domestic order of the Kingdom, whereby the individuals of the state, like members of a well-governed family, are bound to conform their general behavior to the rules of propriety, good neighborhood and good manners and to be decent, industrious and inoffensive in their respective stations." (4 Black. Comm. 162.) Municipal corporations have exercised this power, *eo nomine,* for time out of mind by making regulations to preserve order, to promote freedom of communication and to facilitate the transaction of business in crowded communities. Compensation has never been a condition of its exercise, even when attended with inconvenience or pecuniary loss, as each member of a community is presumed to be benefited by that which promotes the general welfare. All authorities agree that the Constitution presupposes the existence of the police power, and is to be construed with reference to that fact. (2 Hares' Am. Const. Law, 766; Anderson's Law Dict. title "Police.")

Mr. Sedgwick in his work on constitutional law, says that "the clause prohibiting the taking of private property without compensation is not intended as a limitation of the exercise of those police powers which are necessary to the tranquility of every well-ordered community, nor of that general power over private property which is necessary for the orderly existence of all governments. It has always been held that the legislature may make police regulations, although they may interfere with the full enjoyment of private property and though no compensation is given." (Sedgwick on Stat. & Const. Law, 435.)

A recent writer upon the limitations of police power says, that "where the letter of the Constitution would prohibit police regulations, which by all the principles of constitutional government have been recognized as beneficent and permissible restrictions upon the individual liberty of action, such regulations will be upheld by the courts on the ground that the framers of the Constitution could not possibly have intended to deprive the government of so salutary a power and hence the spirit of the Constitution permits such legislation, although a strict construction of the letter prohibits." (Tiedeman's Lim. of Police Power, 12.) "A large part of the police power of the state is exercised by the local governments of municipal corporations, and the extent of their police powers depends upon the limitations of their charters." (Id. 638.) "The limit to the exercise of the police power can only be this; the legislation must have reference to the comfort, the safety or the welfare of society, and it must not be in conflict with the provisions of the Constitution." (Potter's Dwarris on Stat. 458.)

Judge DILLON in his work on municipal corporations (vol. 1, 212), says that "every citizen holds his property subject to the proper exercise of this (police) power, either by the state legislature directly, or by public or municipal corporations to which the legislature may delegate it.   *   *   * It is well settled that laws and regulations of this character, though they may disturb the enjoyment of individual rights,

are not unconstitutional, though no provision is made for compensation for such disturbances.  \*  \*  \*  If one suffers injury it is either *damnum absque injuria,* or, in the theory of the law, he is compensated for it by sharing in the general benefits which the regulations are intended and calculated to secure." The courts have been equally emphatic in their declarations upon the subject. In *Thorpe* v. *Rutland, etc., R. R. Co.* (27 Vt. 140), the court said: "There is also the general police power of the state by which persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health and prosperity, of the perfect right in the legislature to do which no question ever was, or, upon acknowledged general principles, ever can be made."

Chief Justice Shaw, in deciding a case involving the collection of a penalty imposed for the violation of a municipal ordinance requiring the owners or occupants of houses bordering on streets to remove the snow from their respective sidewalks within a specified time, used this significant language : " It is not speaking strictly to characterize this city ordinance as a law levying a tax, the direct principal object of which is the raising of revenue. It imposes a duty upon a large class of persons, the performance of which requires some labor and expense, and, therefore, indirectly operates as a law creating a burden. But we think, it is rather to be regarded as a police regulation, requiring a duty to be performed highly salutary and advantageous to the citizens of a populous and closely built city and which is imposed upon them because they are so situated that they can most promptly and conveniently perform it, and it is laid not upon a few but upon a numerous class, all those who are so situated and equally upon all who are within the description composing the class. \*  \*  \*  Although the sidewalk is part of the public street and the public have an easement in it, yet the adjacent occupant often is the owner of the fee, and generally has some peculiar interest in it and benefit from it, distinct from that which he enjoys in common with the rest of the com-

munity. He has this interest and benefit often in accommodating his cellar door and steps, a passage for fuel and the passage to and from his own house to the street.  *  *  * For his own accommodation he would have an interest in cleaning the snow from his own door. The owners and occupiers of house-lots and other real estate, therefore, have an interest in the performance of this duty, peculiar and somewhat distinct from that of the rest of the community. Besides, from their situation, they have the power and ability to perform this duty with the promptness which the benefit of the community requires and the duty is divided, distributed and apportioned upon so large a number that it can be done promptly and effectually and without imposing a very severe burden upon anyone." (*In re Petition of Goddard,* 16 Pick. 504, 509, 510.)

In a recent case this court, referring to the police power, said : " That power is very broad and comprehensive and is exercised to promote the health, comfort, safety and welfare of society.  *  *  * Under it the conduct of an individual and the use of property may be regulated so as to interfere, to some extent, with the freedom of the one and the enjoyment of the other." (*In re Jacobs,* 98 N. Y. 98, 108.)

And in another late case the court declared that " all property is held subject to the general police power of the state, to so regulate and control its use in a proper case, as to secure the general safety and the public welfare." (*People* v. *Gillson,* 109 N. Y. 389, 398.)

In both of the cases last referred to, the police power was distinctly recognized, but it was held that a statute to be sustained as an exercise of that power, must have some relation to the public health, comfort or safety, and that the rights of property could not be invaded under the guise of a police regulation for the protection of health, when it was manifest that such was not the object of the regulation.

The following authorities, some expressly and others in principle, justify the passage of the ordinance in question as a proper exercise of police power, lawfully delegated to a

municipal corporation by the legislature. (*People* v. *Matti-more*, 45 Hun, 448; *Moore* v. *Williams*, 15 N. Y. 502, 505; *Phelps* v. *Racey*, 60 id. 10; *Cronin* v. *People*, 82 id. 318; *Moore* v. *Gadsden*, 93 id. 12, 17; *Dixon* v. *B. C. & N. R. R. Co.*, 100 id. 176, 179; *People* v. *Arensberg*, 105 id. 123; *Vanderbilt* v. *Adams*, 7 Cow. 349; *Coates* v. *Mayor, etc.*, Id. 585, 606; *Stokes* v. *New York*, 14 Wend. 88; *Sharpless* v. *Mayor, etc.*, 21 Penn. St. 147; *Beer Co.* v. *Massachusetts*, 97 U. S. 25, 33.)

If this power of local legislation can be conferred upon the largest city in the state, it can also be conferred upon the smallest village that the legislature sees fit to incorporate. In this latitude the accumulation of snow upon sidewalks in large quantities is a matter of course. Its presence retards travel, interrupts business and interferes with the safety and convenience of all classes. It is a frequent cause of accidents and thus affects the property of every person who is liable to assessment to pay the damages caused by a failure to remove it. But how is it possible for the authorities of a large city, with many hundred miles of streets, to remove the snow in time to prevent injury to those who have the right to travel upon the sidewalks unless they can require the owners and occupants of adjacent property to remove it? Every man can conveniently and promptly attend to that which is in front of his own door, and it is both reasonable and necessary that he should be compelled to do so. We think that the ordinance under consideration is valid; that it conflicts with no provision of the Constitution, and that it is the duty of the courts to enforce it.

In reaching this conclusion, we have not overlooked the case of *Gridley* v. *City of Bloomington* (88 Ill. 554), but have given it the attention to which it is entitled by the high standing of the court that decided it. The argument upon which the opinion in that case rests is that as the fee of the street was in the corporation and the sidewalk was a part of the street, the lot owner had no more interest in the sidewalk in front of his premises than any other citizen of the municipality, because

it was set apart for the. exclusive use of persons traveling on foot and was as much under the control of the municipal government as the street itself.

We are unable to yield to this reasoning, because it overlooks not only the public safety and general convenience, but also the peculiar interest that every owner or occupant of real property has in a clean sidewalk in front of his own premises. Whatever adds to the usefulness of a sidewalk adds both to the rental and permanent value of the adjacent lot.

After carefully examining all of the questions presented by counsel, we think the judgment should be affirmed.

All concur except FOLLETT, Ch. J., not sitting.

Judgment affirmed.