(100 App. Div. 200)

COUNTY OF ONTARIO v. SHEPARD et al.

(Supreme Court, Appellate Division, Fourth Department. January 4, 1905.)

1. HIGHWAYS—CONSTRUCTION—COUNTIES—BONDS—AUTHORITY TO ISSUE.

Laws 1898, p. 218, c. 115, § 9, providing for the construction of highways, makes one-half of the cost of building a highway a county charge, in the first instance, and authorizes the county to charge 15 per cent. thereof against the town in which the highway is located, but does not provide any means for payment. County Law, § 12, subd. 6 (Laws 1892, p. 1746, c. 686), authorizes boards of supervisors to borrow money necessary for the funding of any debt of the county not represented by bonds, and to issue county obligations therefor, and for other lawful county uses and purposes, etc. *Held*, that where highways were con-

structed, for a part of the cost of which a county was liable under such sections, it had authority to issue bonds for the indebtedness so created.

**2. SAME—TOWNSHIP LIABILITIES.**

Where a county was liable in the first instance for the payment of a portion of an indebtedness for the construction of highways, ultimately payable by a township therein, it was no objection to bonds executed by the county to fund its indebtedness for such highway that they included the indebtedness chargeable to the town.

**3. SAME—BONDS—FORM.**

A county highway bond provided that the county would pay to the holders or their representatives, etc., on a certain date, for which payment the county "binds itself by these presents." The condition of the bond provided that if the county should pay the amount specified, and semiannual interest on all sums unpaid thereon at the rate of 4 per cent. per annum from the date of the last payment thereof, the obligation should be void; otherwise of full force and virtue. *Held*, that the bond was not objectionable on the ground that it was not an unconditional promise to pay.

Action by the county of Ontario against Edward D. Shepard and others. Case submitted on agreed statement of facts. Judgment for plaintiff.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Anson L. Gardner, for plaintiff.

Hamlin & Hamlin (J. H. Caldwell, of counsel), for defendants.

STOVER, J. This is a case submitted on an agreed statement of facts. The plaintiff is a domestic municipal corporation, and the defendants are copartners doing a banking and brokerage business in New York City. The board of supervisors of Ontario county duly passed resolutions for the improvement of roads within the county. Plans, maps, and specifications as required by law were prepared and duly filed by the State Engineer, and the said board of supervisors duly adopted resolutions for the construction of highways, under the provisions of chapter 115, p. 218, of the Laws of 1898. Thereafter proceedings were had under that act, the board of supervisors resolved to issue bonds to the amount of $120,000, and duly advertised for bids for the same, and the defendants thereupon bid for $120,000 of the bonds, agreeing to pay therefor the sum of $122,880, and accrued interest to the date of delivery; the bonds to be delivered at the county treasurer's office, in Canandaigua, on the 22d of August, 1904. In accordance with such bid, the bonds were awarded to the defendants. The defendants have failed to accept or pay for said bonds, alleging that the county of Ontario had no power to issue said bonds for highway improvement; that the county had no right or power to include in the issue the amount to be ultimately paid by the towns; and that the form of the bond was insufficient, in that the maturity thereof is not specified in the condition of the bond; and further objecting that the county treasurer had failed to file his bond prior to the advertisement and the acceptance of defendants' bid for said bonds.

It is contended on the part of the defendants that the county is without power to issue bonds authorized by chapter 115, p. 218, of the Laws of 1898; the precise contention being that the power to borrow money

and issue bonds is not to be implied to a municipal corporation, and that such power must be given by statute, expressly or by necessary implication. No question is made as to the regularity of the proceedings for the improvement of the highways, so far as the preliminary resolutions and certificates are concerned.

The statute provides:

"Sec. 9. One-half of the expense of the construction thereof shall be paid by the State Treasurer upon the warrant of the Comptroller, issued upon the requisition of such engineer, out of any specific appropriations made to carry out the provisions of this act. And one-half of the expense thereof shall be a county charge in the first instance, and the same shall be paid by the county treasurer of the county. in which such highway or section thereof is, upon the requisition of such engineer, but the amount so paid shall be apportioned by the board of supervisors, so that if the same has been built upon a resolution of said board without petition, thirty-five per centum of the cost of construction shall be a general county charge; and fifteen per centum shall be a charge upon the town in which the improved highway or section thereof is located, and if the same has been built upon a resolution of said board after petition as provided in section two, thirty-five per centum shall be a general county charge and fifteen per centum shall be assessed upon and paid by the owners of the lands benefited in the proportion of the benefits accruing to said owners as determined by the town assessors in the next section hereof."

It will be seen that this section makes the cost of building the highway a county charge in the first instance, and, of course, payable in the first instance by the county; but, under the other provisions of the statute, 15 per cent. is to be charged against the town, and collected in the usual manner; but the statute nowhere directs the special manner in which this obligation shall be met by the county.

It is said in Village of Carthage v. Frederick, 122 N. Y. 268, 25 N. E. 480, 10 L. R. A. 178, 19 Am. St. Rep. 490, as follows:

"A municipal corporation possesses not only the powers specifically conferred upon it by its charter, but also such as are necessarily incident to, or may fairly be implied from, those powers, including all that are essential to the declared object of its existence."

While this is said in a case not involving the identical question here, yet it is no more true in the situation appearing in the case cited than in the one under consideration. There can be no question that it was the duty of the supervisors to provide means for the payment of the extraordinary expenditure for the improvement of roads. The Legislature gave the power to incur the liability, and, unless it provided some means for its payment, it is left to the board of supervisors to employ such means and measures as are generally incident to the discharge of such liabilities. Were there no further authority than chapter 115, p. 218, of the Laws of 1898, it would be the duty of the board of supervisors to provide means for the purpose of paying the obligation as it matured. Nor do we think that it contemplated that the entire sum was to be raised by immediate taxation. This construction would involve the ignoring of experience and the rejection of ordinary business methods in financial transactions. Unless we are necessarily brought to such a determination, we ought not to place such a construction upon the statute as would involve a hardship to the community and needless accumulation of funds, or, in short, prevent the board of supervisors from acting as an ordinarily prudent man would act in the handling of

financial transactions of this nature. The ordinary method would be the negotiation of a loan to be paid at such time or times as might be convenient, and at the same time not compel the carrying of a large amount of idle money, or place it at the risk of depositories.

We think a fair construction of the statute is that the liability was to be handled by the board of supervisors, within their sound business judgment; and they necessarily would be compelled to proceed in accordance with ordinary business management, and adopt the usual methods for raising money and discharging a liability, and, if they failed to proceed in this way, any aggrieved taxpayer might interfere.

It is provided in the county law (Laws 1892,. p. 1746, c. 686, § 12, subd. 6), under the general powers given to boards of supervisors, that they shall:

"(6) Borrow money when they deem it necessary, for the erection of county buildings, and for the purchase of sites therefor, on the credit of the county, and for the funding of any debt of the county not represented by bonds, and issue county obligations therefor, and for other lawful county uses and purposes; and authorize a town in their county to borrow money for town uses and purposes on its credit, and issue its obligations therefor, when, and in the manner, authorized by law."

So reading the two statutes together, we have a highway law which authorizes the creation of a debt of the county; and under the county law it was the duty of the supervisors to borrow money for the funding of any debt of the county not represented by bonds, and to issue obligations therefor. And if this is not sufficient, they are authorized to borrow money for other lawful county uses and purposes. Surely the payment of a debt which the Legislature has authorized is a lawful purpose for the issuing of bonds.

We do not further discuss the criticism of the defendants that the 15 per cent. of the debt for which the towns are ultimately liable is included, for, as we have seen, the debt is in the first instance a county charge; and no argument is necessary to establish the liability of the county to pay it in the first instance, and therefore it is as much its duty to raise this portion as the other.

The next contention of the defendants is that the form of the bond is insufficient, in that the maturity thereof is not specified in the condition of the bond. The condition of the bond is that the county of Ontario would pay to the defendants, or their "certain representatives, successors or assigns, on the first day of July, 19—, for which payment well and truly to be made the said County of Ontario binds itself by these presents." Then follows a condition as follows:

"The condition of this obligation is such that if the above bounden County of Ontario shall well and truly pay or cause to be paid to the above named ———, his or its certain representatives, successors or assigns, the sum of ——— Dollars and semi-annual interest upon all sums unpaid thereon, to be paid on the first day of January and July, as the same shall accrue, at the rate of 4 per cent. per annum from the date of the last payment thereof, then this obligation shall be void; otherwise to remain in full force and virtue. All payments of principal and interest to be made at the United States Mortgage and Trust Company, of 55 Cedar Street, New York.

"This bond is issued in pursuance of sections 12 and .14 of the County Law, Chapter 115 of the Laws of 1898, and its amendments, and in pursuance of resolution of the board ·of supervisors of Ontario County, duly passed July 12th, 1904."

Under the resolution of July 12th, it was provided that the bonds should be issued in eight series, of $15,000 each, maturing from July, 1906, to July, 1913; and it is not questioned but that the form of the bond will be filled in in accordance with the resolution as adopted. While perhaps another form of bond might be preferable to defendants, yet there is no question but that the bond, as presented and filled up with the dates in accordance with the resolution of the board of supervisors, will be such as was offered at the time the bids were invited, and it undoubtedly calls for the payment of a definite sum of money on a definite date. The criticism is that it is not an unconditional promise to pay, but that the condition rules the bond. We do not think that any different rule will obtain in this than in the interpretation of other legal documents. It is to be read as a whole. The condition adds the additional obligation to pay semiannual interest on the 1st day of January and July at the rate of 4 per cent.; and, construing the obligation and the condition together, we think it must be fairly said to be an obligation which requires the payment of a certain fixed sum of money on a certain day, with semiannual interest payable on the 1st day of January and July.

The last objection urged by the defendants is that the county treasurer had failed to file the undertaking which is a condition precedent to the maintenance of this action. The resolution of the board of supervisors provided for the execution and filing of the bond by the county treasurer in accordance with the statute, and the bond given and filed by him is in the form required by the statute, and certainly, in so far as it may affect the defendants in this action, is sufficient. It is not an unusual bond, and we can see no valid objection to it. The plaintiff is entitled to judgment upon the issues herein in accordance with the stipulation of the parties.

Judgment directed for plaintiff upon the agreed statement in accordance with the stipulation of the parties, without costs. All concur.