THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* C. KLINCK PACKING COMPANY, Appellant.

(County Court, Erie County, May, 1914.)

Labor Law — setting apart one day in each week for benefit of employee — Sunday Law — Penal Law, § 1275.

The statute (Laws of 1913, chap. 740), which adds section 8a to article II of the Labor Law (Consolidated Laws, chap. 31), so far as it is a Sunday law is valid, and so far as it requires the setting apart for the benefit of employees one day in the week where they have been required to work on Sunday the statute may be sustained upon the ground that common ex-

perience has shown that men need one day in seven for rest, recreation and mental and moral improvement.

Where, upon a charge of violating said section 8a, the proof shows that defendant employed and permitted to work on each and every day commencing December 7, and ending December 14, 1913, four of its employees without granting them a period of twenty-four consecutive hours of rest, it was properly convicted in each case of a misdemeanor under section 1275 of the Penal Law.

Appeals from judgments of the City Court of Buffalo convicting defendant of four separate violations of the Labor Law.

J. Ralph Ulsh, for appellant.

Clifford McLaughlin, for respondent.

Laing, J.   These are four appeals from judgments of the City Court of Buffalo, rendered on the 30th day of March, 1914, convicting the defendant of violating the Labor Law, particularly section 8a of article 2 of chapter 31 of the Consolidated Laws, being chapter 740 of the Laws of 1913... The defendant was convicted of four separate violations of the law in four separate proceedings, each based upon an information filed by William Gorman, an inspector employed by the state department of labor. In each case a fine of twenty dollars was imposed. The material facts of the four violations are the same, except that it appears that the employee, William L. Buchs, was a foreman and as such was within the exemption provided for in the statute. The proof shows that the defendant employed and permitted to work on each and every day during the period beginning December 7 and ending December 14, 1913, four of its employees without granting them a period of twenty-four consecutive

hours of rest in violation of the statute. Such violation is declared to be a misdemeanor by section 1275 of the Penal Law.

The statute (Laws of 1913, chap. 740) reads as follows:

"§ 8-a. One day of rest in seven. (1) Every employer of labor engaged in carrying on any factory or mercantile establishment in this state shall allow every person, except those specified in subdivision two, employed in such factory or mercantile establishment at least twenty-four consecutive hours of rest in every seven consecutive days. No employer shall operate any such factory or mercantile establishment on Sunday unless he shall have complied with subdivision three. Provided, however, that this section shall not authorize any work on Sunday not now or hereafter authorized by law.

"2. This section shall not apply to

"(a) Janitors;

"(b) Watchmen;

"(c) Employees whose duties include not more than three hours' work on Sunday in (1) Setting sponges in bakeries; (2) Caring for live animals; (3) Maintaining fires; (4) Necessary repairs to boilers or machinery.

"(d) Superintendents or foremen in charge.

"(3) Before operating on Sunday, every employer shall post in a conspicuous place on the premises a schedule containing a list of his employees who are required or allowed to work on Sunday and designating the day of rest for each, and shall file a copy of such schedule with the commissioner of labor. The employer shall promptly file with the said commissioner a copy of every change in such schedule. No

30

employee shall be required or allowed to work on the day of rest so designated for him.

" 4. Every employer shall keep a time-book showing the names and addresses of all employees and the hours worked by each of them in each day, and such time-book shall be open to inspection by the commissioner of labor.

" 5.. The industrial board at any time when the preservation of property, life or health requires, may except specific cases for specified periods from the provisions of this act by written orders which shall be recorded as public records."

The appellant contends that the above statute is repugnant to section 1 and section 6 of article I of the state Constitution, and to the fourteenth amendment of the federal Constitution. It is claimed that this case comes under the principles laid down in the case of *Lochner* v. *New York,* 198 U. S. 45, reversing 177 N. Y. 145, known as the " Bake-Shop Case." The statute under consideration in the *Lochner* case prohibited the employment of employees in bake shops for more than ten hours per day, and more than sixty hours per week. In that case the court held that the statute under consideration necessarily interfered with the right of contract between the employer and the employee concerning the number of hours which the employee might work in a bake shop, and it is very confidently urged here that the same proposition is involved in the cases on appeal.

The statute (Laws of 1913, chap. 740) is in part a. Sunday law. The necessary result of its enforcement will be to extend the observance of Sunday. So far as it is a Sunday law there is ample authority to sustain its validity. So far as it is a law requiring the setting apart for the benefit of employees one day in the week when such employees have been required to work on

Sunday, the law may perhaps be sustained upon *one* of the grounds upon which Sunday laws have been held to be valid. Sunday laws have been upheld on two grounds: (1) That the day is held to be sacred by a large part of the people and, therefore, their feelings should not be permitted to be outraged by the conduct of others, and (2) that common experience has shown that men need one day in seven for rest, recreation and mental and moral improvement.

Cooley on Constitutional Limitations, page 675, says: " The laws which prohibit ordinary employments on Sunday are to be defended, either on the same grounds which justify the punishment of profanity, or as establishing sanitary regulations, based upon the demonstration of experience that one day's rest in seven is needful to recuperate the exhausted energies of body and mind."

In *Bloom* v. *Richards,* 2 Ohio St. 387, at p. 391, Thurman, J., says: " Thus the statute upon which the defendant relies, prohibiting common labor on the Sabbath, could not stand for a moment as a law in this state, if its sole foundation was the christian duty of keeping that day holy, and its sole motive to enforce the observance of that duty. For no power over things merely spiritual has ever been delegated to the government, while any preference of one religion over another, as the statute would give upon the above hypothesis, is directly prohibited by the constitution. * * * We. are, then, to regard the statute under consideration as a mere municipal or police regulation, whose validity is neither strengthened nor weakened by the fact that the day of rest it enjoins is the Sabbath day. Wisdom requires that men should refrain from labor at least one day in seven, and the advantages of having the day of rest fixed, and so fixed as to happen on regularly recurring intervals,

are too obvious to be overlooked. It was within the constitutional competency of the general assembly to require this cessation of labor, and to name the day of rest. It did so by the act referred to, and, in accordance with the feelings of a majority of the people, the Christian Sabbath was very properly selected. But regarded merely as an exertion of legislative authority, the act would have had neither more nor less validity had any other day been adopted.''

In *McGatrick* v. *Wason,* 4 Ohio St. 566, at p. 571, the same justice says: '' It [the statute under consideration] simply prescribes a day of rest, from motives of public policy and as a civil regulation; and as the prohibition itself is founded on principles of policy, upon the same principles certain exceptions are made, among which are ' works of necessity and charity.' In saying this, I do not mean to intimate that religion prohibits works of necessity or charity on the Sabbath, but merely to show that the principles upon which our statute rests are wholly secular; and that they are none the less so because they may happen to concur with the dictates of religion. Thus the day of rest, prescribed by the statute, is the Christian Sabbath, yet so entirely does the act rest upon grounds of public policy, that * * * it would be equally constitutional and obligatory, did it name any other day, and it derives none of its force from the fact that the day of rest is Sunday. For, as was also said in that case, no power whatever is possessed by the legislature over things spiritual, but only over things temporal; no power whatever to enforce the performance of religious duties, simply because they are religious — but only, within the limitations of the constitution, to maintain justice and promote the public welfare.''

In *Specht* v. *Commonwealth,* 8 Penn. St. 312, at

p. 323, Bell, J., says: "All agree that to the well-being of society, periods of rest are absolutely necessary. To be productive of the required advantage, these periods must recur at stated intervals, so that the mass of which the community is composed may enjoy a respite from labor at the same time. They may be established by common consent, or, as is conceded, the legislative power of the state may, without impropriety, interfere to fix the time of their stated return and enforce obedience to the direction. When this happens, some one day must be selected, and it has been said the round of the week presents none which, being preferred, might not be regarded as favoring some one of the numerous religious sects into which mankind are divided. In a Christian community, where a very large majority of the people celebrate the first day of the week as their chosen period of rest from labor, it is not surprising that that day should have received the legislative sanction; and as it is also devoted to religious observances, we are prepared to estimate the reason why the statute should speak of it as the Lord's day, and denominate the infraction of its legalized rest, a profanation. Yet this does not change the character of the enactment. It is still, essentially, but a civil regulation made for the government of man as a member of society, and obedience to it may properly be enforced by penal sanction. * * * Its sole mission is to inculcate a temporary weekly cessation from labor, but it adds not to this requirement any religious obligation."

In *Commonwealth* v. *Has,* 122 Mass. 40, at p. 42, Devens, J., says: "This act * * * is essentially a civil regulation, providing for a fixed period of rest in the business, the ordinary avocations and the amusements of the community. If there is to be such a cessation from labor and amusement, some one day

must be selected for the purpose; and even if the day thus selected is chosen because a great majority of the people celebrate it as a day of peculiar sanctity, the legislative authority to provide for its observance is derived from its general authority to regulate the business of the community and to provide for its moral and physical welfare.''

In *Lindenmuller* v. *People,* 33 Barb. 548, at p. 568, Allen, J., says: '' But as a civil and political institu-tion, the establishment and regulation of a sabbath is within the just powers of the civil government. With us, the sabbath, as a civil institution, is older than the government. The framers of the first constitution found it in existence; they recognized it in their acts, and they did not abolish it, or alter it, or lessen its sanctions or the obligations of the people to observe it. But if this had not been so, the civil government might have established it. It is a law of our nature that one day in seven must be observed as a day of relaxation and refreshment, if not for public worship. Experi-ence has shown that the observance of one day in seven as a day of rest ' is of admirable service to a state, considered merely as a civil institution.' (4 Bl. Com. 63.) We are so constituted, physically, that the precise portion of time indicated by the decalogue must be observed as a day of rest and relaxation, and nature, in the punishment inflicted for a violation of our physical laws, adds her sanction to the positive law promulgated at Sinai. The stability of govern-ment, the welfare of the subject and the interests of society, have made it necessary that the day of rest observed by the people of a nation should be uniform, and that its observance should be to some extent com-pulsory, not by way of enforcing the conscience of those upon whom the law operates, but by way of pro-

tection to those who desire and are entitled to the day."

In *People* v. *Havnor,* 149 N. Y. 195, at p. 201, Vann, J., says: "The peculiar character of the first day of the week, not simply on account of the obligations of religion, but as a day of rest and recreation, has been recognized for time out of mind both by the legislature and the courts. * * * The rule is believed to be general throughout the Union, although not generally enforced, that the ordinary business of life shall be suspended on Sunday, in order that thereby the physical and moral well-being of the people may be advanced. * * * The leading case in our own state upon the subject is that of *Lindenmuller* v. *People* (33 Barb. 548), in which Judge Allen discussed the common law as well as legislation affecting the Sabbath with great force and clearness. He held, in substance, that the body of the Constitution recognizes Sunday as a day of rest and an institution to be respected, by not counting it as a part of the time allowed to the governor for examining bills submitted for his approval; that the Sabbath exists as a day of rest by the common law without the necessity of legislative action to establish it; and that the legislature has the right to regulate its observance as a civil and political institution. That case was expressly approved in *Neuendorff* v. *Duryea* (69 N. Y. 557) and was referred to as one 'which has never been questioned in a court of higher or equal authority,' and ' as declaring the law of this state.' * * * According to the common judgment of civilized men, public economy requires, for sanitary reasons, a day of general rest from labor, and the day naturally selected is that regarded as sacred by the greatest number of citizens, as this causes the least inconvenience through interference with business. It is to the interest of the

state to have strong, robust, healthy citizens, capable of self-support, of bearing arms, and of adding to the resources of the country. ·Laws to effect this purpose, by protecting the citizen from overwork and requiring a general day of rest to restore his strength and preserve his health, have an obvious connection with the public welfare. Independent of any question relating to morals or religion, the physical welfare of the citizen is a subject of such primary importance to the state, and has such a direct relation to the general good, as to make laws tending to promote that object proper under the police power, and hence valid under the Constitution, which ' presupposes its existence, and is to be construed with reference to that fact.' (*Village of Carthage* v. *Frederick*, 122 N. Y. 268, 273.) "

The above quotations show that one of the grounds upon which Sunday laws have been upheld is that they afford a necessary opportunity for rest, recreation and mental and moral improvement. If that ground alone is sufficient to uphold a Sunday law it ought to be sufficient to uphold the statute under consideration. There is no doubt that it is the common judgment of civilized men, irrespective of their religious opinions, that a day for rest, recreation and mental and moral improvement (one day in seven) is necessary. That being the case, it logically follows that the legislature in the exercise of its police powers has authority to enact laws giving to laborers such a day. In these times great numbers of laborers have no opportunity to secure by contract such a day. If they work they must conform to the methods of business adopted and carried on by those who manage business. If such laborers are to have a day of rest, recreation and mental and moral improvement it must be secured to them by legislation. I do not regard the statute here

under consideration as involving the same proposition involved in the laws regulating the hours of labor in a day. At any rate, if this statute is to be declared unconstitutional, the Appellate Division or Court of Appeals is the tribunal to make that declaration.

I conclude that the judgments appealed from should be affirmed.

Judgments affirmed.