PEOPLE v. O'BRIEN et al.

(Supreme Court, Appellate Division, Third Department.   May 7, 1913.)

1. APPEAL AND ERROR (§ 840*)—SCOPE OF REVIEW.
In determining whether a judgment for defendants on the pleadings was properly granted, although an answer was served, it could not be considered, where the judgment was granted on the ground that the complaint was insufficient.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3301, 3303–3314;  Dec. Dig. § 840.*]

2. FRAUD (§ 9*)—FRAUD BY SELLER.
Where parties furnishing coal to a state prison fraudulently represented to the state's agent that it was pea coal, although it was coal of an inferior quality and worth $1 a ton less than pea coal, and the agent relying on such false representations paid therefor as pea coal, the state was entitled to recover its damages sustained thereby.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 8;  Dec. Dig. § 9.*]

3. STATES (§ 208*)—CONTRACTS—FRAUDULENT PERFORMANCE—ACTIONS—COMPLAINT.
A complaint, alleging that, in response to advertisements for bids for furnishing egg coal for use at a state prison, defendants made a bid of $4.75 a ton which was accepted, that with intent to defraud the state they wrongfully induced the agents and wardens of the prison to enter into contracts with them for the delivery of grate coal worth 35 cents a ton less than egg coal, that pursuant to such contract they delivered grate coal and presented claims to the agents of the prison and wrongfully and unlawfully received pay therefor at the rate of $4.75 a ton, which was 35 cents a ton in excess of its value, stated a cause of action for the recovery of 35 cents a ton for the amount of coal furnished, since it alleged by inference collusion between the defendants and the agent of the state, as the acceptance of coal of an inferior quality for a better coal to which the state was entitled at the same price was such a disregard of duty as, unexplained, imported a connivance with the defendant.

[Ed. Note.—For other cases, see States, Cent. Dig. § 199;  Dec. Dig. § 208.*]

4. STATES (§ 208*)—CONTRACTS—FRAUDULENT PERFORMANCE—ACTIONS—COMPLAINT.
A complaint, alleging that defendants, having a contract to deliver egg coal to a state prison, delivered grate coal worth 55 cents a ton less than egg coal and presented to the agent and warden claims as for egg coal which were knowingly false and fraudulent and caused and induced the agent and warden to pay such false and fraudulent claims, stated a cause of action for the recovery of the amount paid in excess of the value of the coal, since, if the agent and warden had knowledge that defendants were not furnishing the coal stipulated for in the contract, they were impliedly in collusion with defendants, and, if they either were in collusion with defendants or were misled by defendants, the acceptance of the coal was not a defense.

[Ed. Note.—For other cases, see States, Cent. Dig. § 199;  Dec. Dig. § 208.*]

Kellogg and Woodward, JJ., dissenting.

Appeal from Special Term, New York County.

Civil action by the People against John F. O'Brien and another. From an order granting a motion by defendants for judgment on the

pleadings, and from a judgment entered pursuant thereto (78 Misc. Rep. 679, 140 N. Y. Supp. 257), plaintiff appeals. Reversed, and motion denied.

See, also, 141 N. Y. Supp. 1134.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Thomas Carmody, Atty. Gen., and James A. Parsons, Deputy Atty. Gen., for the People.

Royal Corbin, of Plattsburgh (Edgar T. Brackett, of Saratoga Springs, of counsel), for respondents.

SMITH, P. J. [1] Defendants made application pursuant to section 547 of the Code of Civil Procedure for judgment upon the pleadings. While an answer has been served, its allegations cannot be considered in determining the question at issue. The order for judgment has been made upon the ground that the complaint fails to state facts sufficient to constitute a cause of action, and that ground presents the only question here for consideration.

[2] The complaint assumes to assert three causes of action. The defendants were furnishing coal to the Clinton state prison at Dannemore, Clinton county. From October, 1903, until May, 1910, they furnished 32,943 tons of coal. This coal they fraudulently represented to the warden of the state prison as pea coal, knowing that of the amount 16,133 tons were not pea coal but were of an inferior quality, and worth $1 a ton less than pea coal. The said agents relying upon said false representations made payments of said claims as and for pea coal. These are the facts which the plaintiff alleges as constituting its first cause of action. Upon proof of these facts standing alone the plaintiff would be entitled to the judgment of the court for the damages sustained. The money was procured by the fraudulent representations of the defendants, relied upon by the agent of the state who had authority to act. All the elements of fraud are therefore included in the statement of this cause of action.

[3] In the second cause of action it appears that the defendants were furnishing coal to the Sing Sing prison in the state of New York; that between April, 1907, and June, 1908, proposals were advertised for by the Department of Prisons for the furnishing of egg anthracite coal for use at said prison; that pursuant to said advertisements the defendant bid $4.75 per gross ton, and said bid was accepted by the Prison Department as being the lowest bid. It is further alleged that with intent to defraud the people of the state the defendants wrongfully induced the agents and wardens of said Sing Sing prison to enter into written contracts with the defendants for the delivery of grate coal, which was a coal of inferior and cheaper grade, and of a value of 35 cents per ton less than egg coal, and that pursuant to said contract the defendants did deliver to the said Sing Sing prison grate coal to the amount of 11,085 tons. It is further alleged that the defendants from time to time wrongfully and unlawfully presented claims to the agents of said prison for coal so furnished, and wrongfully and unlawfully received pay therefor at the rate of $4.75 per ton, which was

35 cents per ton in excess of the value of the coal so furnished, and for this 35 cents per ton the plaintiff demands judgment. It is not directly alleged that this grate coal was furnished in substitution for the egg coal for which the bids were made. It is so treated, however, by counsel and by the Special Term, and perhaps this is fairly inferable from the facts stated. Nor is it explicitly alleged that the agents of the prison wrongfully colluded with the defendants to furnish an inferior coal as a substitute for the better coal to which they were entitled at the same rate. The facts, however, unexplained, would warrant necessarily an inference that there was collusion between the defendants and the agent of the state. To accept coal of an inferior quality for a better coal to which the state was entitled at the same price is so at variance with the duty of the agent of the state that his consent thereto, unexplained, imports a disregard of his duty and a connivance with the defendants in obtaining from the state an unfair advantage. In my judgment, therefore, the facts alleged in the second cause of action entitled the people to relief.

[4] The questions arising as to the third cause of action present more difficulty. That is a cause of action to recover an overpayment for coal furnished at the Sing Sing prison under a contract to deliver 5,000 tons of egg anthracite coal at $4.95 per gross ton. It is alleged that between the 1st day of May, 1909, and the 1st day of May, 1910, the defendants delivered to said Sing Sing prison 6,050 tons of grate coal, the same being a coal of an inferior quality and of a value at that time of 55 cents less per ton than egg coal, and from time to time during said period presented to said agent and warden claims for egg coal. It is further alleged that the claims so presented were knowingly false, fraudulent, and unlawful, in that the coal furnished was not egg coal, but was grate coal and of an inferior quality and of a value at that time of 55 cents per ton less than egg coal. Further, that said defendants well knew that said claims were false, fraudulent, and unlawful, and said defendants wrongfully caused and induced said agents and wardens to pay false and fraudulent claims, and thereby obtained and received, and have ever since kept and retained without authority, money belonging to the state to the amount of $3,327.50. In this cause of action, as in the second cause of action, there is no allegation that the grate coal was delivered in substitution for the egg anthracite, for which the contract was made; but, as in the second cause of action, it has been assumed by the court and by counsel that such was the fact, and so it will be here assumed. It is not specifically alleged in this cause of action that the agent of the state relied upon the fraudulent claims of the defendants in making these payments. It is alleged, however, that they falsely and fraudulently represented that the coal was egg coal, while in fact it was not egg coal, but was of an inferior quality, and that they wrongfully and fraudulently induced the wardens to pay such false and fraudulent claims. The court should give the pleading a fair interpretation, and the complaint should probably be deemed fairly to allege that the agents and wardens of prisons were induced to make payment of said claims by the fraudulent representation of the defendants that the coal delivered was egg coal, as

specified in the contract. If the agent and warden of the prison had knowledge that the defendants were not furnishing the coal stipulated for in the contract, they were impliedly in collusion with the defendants in not insisting upon the rights of the state and in making payment as for the better coal. If through the fraud of the defendants the agent or warden was misled and thereby induced to make full payment therefor, the state should clearly recover back the excessive value paid. So that upon either horn of the dilemma, whether the agent colluded with the defendants, or whether innocent and misled, upon the statement of facts as appear in the complaint the plaintiff is entitled to relief. The questions presented by the allegations of the answer are not here for consideration. The learned judge at Special Term has held the complaint insufficient, upon the ground that the state officers are presumed to have done their duty and to have examined and accepted this coal as in full compliance with the contract. His opinion indicates that if collusion were averred between the defendants and the agent a different question might be presented. If, as stated above, however, the acceptance of the coal were induced by the fraudulent representations of the defendants, or if upon the other supposition the agent having full knowledge of the rights of the state and having sacrificed the interests of the state, his collusion with the defendants may be deemed to be impliedly averred, the acceptance is no defense to the claim of the state.

I recommend, therefore, that the order and judgment be reversed, with costs, and that the motion for judgment be denied, with $10 costs.

Order and judgment reversed, and motion for judgment denied, with $10 costs and disbursements. All concur, except KELLOGG, J., dissenting in memorandum in which WOODWARD, J., concurs.

JOHN M. KELLOGG, J. (dissenting). Every public official is presumed to have acted lawfully and to have performed his duties in good faith. The complaint must be read in connection with this presumption. It contains no allegation of bad faith or fraud on the part of the agent and warden or clerk, and does not allege that they relied upon or were deceived by any statement or representation of the defendants. It was prepared by skilled lawyers, who evidently stated the facts in the most favorable manner. The fact that the appellant has appealed from the order, instead of amending the complaint, indicates that the facts do not permit an amendment or that it is deemed more important to settle a question of practice than to try the case on its merits.

Under section 132 of the Prison Law (Consol. Laws, 1909, c. 43), the agent and warden may supply the prisons with necessary articles for maintenance "either by contract or by purchase" as shall be directed by the Superintendent of State Prisons. Under the first alleged cause of action there evidently was no contract for the furnishing of coal from time to time, but the transactions were "by purchase."

Section 136 of the Prison Law contemplates that the agent and warden, at the time he receives articles purchased, shall receive also a bill of the purchase, and that the clerk shall enter the bill in the books at the time of the receipt of the articles, "and in case the articles received do not agree in all respects with the invoice, he shall immediately notify the agent and warden of such discrepancy and note in his book the discrepancy, whether in weight, quantity or quality." And by section 127 the agent and warden is required to make a monthly statement of his receipts and expenditures, specifying the items thereof, to which must be attached the affidavit of the clerk certifying "that the articles contained in such bill were received at the prison and that they conformed in all respects to the invoice of the goods received and entered by him, both in quality and quantity."

It is thus apparent that all articles purchased must be examined by the agent and warden and the clerk, and each is required to see that there is no discrepancy in the quality or quantity and that they comply with the bill accompanying the delivery. Evidently the kind of coal and the price were agreed upon. The officers were derelict in their duty if they left to a vendor to determine what quality of goods he should deliver and what price he should charge therefor. It is not alleged that the state did not get the kind of coal it purchased, or that it paid more for the coal than it was actually worth, or more than the agreed price. It is simply alleged that the coal delivered was "of an inferior quality and grade, and of a value of one dollar per ton less than pea coal." That is the only allegation as to the kind of coal or the value of any kind of coal. The only other fact alleged is that the defendants presented verified claims for the coal describing it as pea coal, and that said claims in that respect were knowingly false and fraudulent and that they received pay on said claims.

It was the duty of the agent and warden to inspect the coal when delivered and to ascertain that it was the kind bought. We must assume that duty was performed. If upon examination the coal delivered was found to be the coal purchased, it is quite immaterial, so far as the plaintiff's claim for damages is concerned, how the coal was described in the claims presented. The actual purchase, delivery, and acceptance of the coal are what fixed the rights of the state.

For its second cause of action it is alleged that pursuant to advertisements for furnishing egg anthracite coal the defendants' bid of $4.75 per gross ton was accepted by the prison department as the lowest bid; that a contract was actually made between the agent and warden and the defendants for the furnishing of grate coal at that price, grate coal being worth 35 cents per ton less than egg coal; and that the coal was delivered and paid for pursuant to the contract. It alleges that the defendants wrongfully, fraudulently, and unlawfully, and contrary to the terms of the bid, caused and induced the agent and warden to enter into the above contract.

Under section 132 of the Prison Law, after a bid is accepted, a contract is to be made, if the bidder gives satisfactory security, unless the superintendent shall deem it best to decline all proposals and

·advertise again. Therefore the advertisement and the making and the acceptance of the bid were not in themselves the contract. The complaint does not allege any fact showing any fraud or wrong upon the part of the defendants, or which indicates any wrong or bad faith upon the part of the prison officials. If the defendants fraudulently overreached their judgment, the facts by which the result was accomplished should be alleged. The complaint alleges a conclusion, without a statement of facts sustaining it. If coal had advanced in price, or egg coal was not available, or the defendants had refused to enter into a contract according to their bid and the state ·was forced to contract for the other kind of coal, perhaps the pleader would have felt justified in claiming that the defendant had acted fraudulently, wrongfully, and unlawfully and thereby procured the making of the contract. The only effect of the allegation as to the accepted bid is to indicate that the contract actually entered into was unlawful because not made pursuant to a regular bid. If we assume the contract as made was unlawful for that reason, it does not follow that the plaintiff has a cause of action upon the facts alleged. Each delivery of grate coal pursuant to the alleged contract would either be deemed a separate purchase at the contract price or on a quantum meruit. The mere fact that the defendants had prior to that time offered to furnish a more valuable coal at $4.75 a ton does not indicate that at the time the coal in question was furnished it was not of that value. There is no allegation as to what the coal was worth, or that it was worth less than the price paid.

The third alleged cause of action proceeds upon the theory that the defendants by contract were to furnish 5,000 tons of egg anthracite coal at $4.95 per ton, but that they delivered 6,050 tons of grate coal, which was in fact worth 55 cents per ton less than egg coal, and presented a bill for egg coal; that the claim so presented was knowingly false, fraudulent, and unlawful; and that the defendants unlawfully caused and induced the agent and warden to pay the false and fraudulent claim.

This was evidently an executory contract to deliver coal in the future. We may fairly assume that the difference between grate coal and egg coal is apparent on inspection. The deliveries were made prior to May in 1910; the action was brought in January, 1912. It does not appear that any previous complaint had been made about the coal. It was accepted and used as complying with the terms of the contract. The description of the coal in the contract as grate coal is not a warranty which can be relied upon after the coal is accepted, but it is a description of the property, and, if not complied with, the purchaser is not required to accept, but if the property offered is accepted as a compliance with the contract, such acceptance irrevocably establishes that the contract has been fulfilled by the vendor. Coplay Iron Co. v. Pope et al., 108 N. Y. 232, 15 N. E. 335; Carleton v. Lombard, Ayres & Co., 149 N. Y. 137, 43 N. E. 422. Undoubtedly, if the defendants and the prison officials unlawfully conspired to defraud the state by the delivery of the inferior coal under the contract, such fraudulent acceptance would not be binding

upon the state. The action, however, would not be upon the contract, but would be for damages arising from the fraudulent conspiracy, upon proper allegations to that effect.

The state as a contractor, or suitor with reference to its contract, is bound by the same rules of law as apply to private corporations and persons. If its officers, charged with the duty of purchasing and accepting goods for use, act in good faith and give the state the benefit of their best judgment in determining whether the goods furnished under an executory contract are a compliance with its terms, their determination is binding upon the state and it has no further remedy upon the contract. In order to obtain relief where property has been accepted under an executory contract without warranty, it must show not only the wrongful act of the contractor but of its officials or servants who accepted the property, thereby vitiating the effect of the acceptance. A mere allegation that a party wrongfully or fraudulently committed an act is not a sufficient allegation of fraud, but is a conclusion; and, no fact being stated from which the conclusion follows, it is without effect. The only act alleged against the defendants tending to show that they acted fraudulently, wrongfully, or unlawfully is that they billed the coal as egg coal. There is an entire absence of facts tending to show that they corrupted or improperly influenced the prison officials or by positive fraud overreached their minds. It cannot be, when a party to an executory contract tenders an improper article under the contract as a compliance with its terms, that that alone constitutes fraud which vitiates the acceptance and makes the vendor liable for damages. Some fraudulent act which prevented a proper inspection, or which overreached or corrupted the minds of the official, must be shown. The allegation that the state officials were fraudulently procured to do certain acts is a mere conclusion; no facts being stated upon which such conclusion is based.

I favor an affirmance, with leave to amend so that the plaintiff, if it has a cause of action, may allege it, and that the trial may proceed upon a proper complaint.