THE PEOPLE OF THE STATE OF NEW YORK ex rel. MARY
B. KNOBLAUCH, Appellant, *v.* WARDEN OF THE JAIL
OF THE FOURTH DISTRICT MAGISTRATES' COURT,
Respondent.

**New York (city of) — power of board of health to adopt rules
requiring the muzzling of dogs — presumption that ordinance,
within power of body passing it, is reasonable and just.**

1. Authority to the board of aldermen of the city of New York
to maintain or regulate, in a certain respect, matters relating to the
public health was not intended to and does not bar the board of
health from exercising its power as the authorized conservator
thereof.

2. The legislature did not intend by the provisions of sections 50
and 51 of the charter of the city of New York (L. 1901, ch. 466) to
preclude the board of health from adopting a section of the
Sanitary Code of that city which provides that no unmuzzled dog
shall be permitted, at any time, to be on any public highway or in
any public park or place in the city of New York, or such other
reasonable and just regulation or ordinance in relation to dogs as
the public health and safety required.

3. When an ordinance is within the power of the body which
passed it, the presumption is that it is reasonable and just, and the
judicial power to declare it void can be exercised only when, from .
the inherent character of the ordinance or from evidence showing
its operation and effect, it is demonstrated to be otherwise.

*People ex rel. Knoblauch* v. *Warden, etc.,* 168 App. Div. 951,
affirmed.

(Argued September 27, 1915; decided November 16, 1915.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered
May 28, 1915, which affirmed an order of Special Term
dismissing a writ of habeas corpus.

The facts, so far as material, are stated in the opinion.

*Bertha Rembaugh* for appellant. The board of health
has no power to pass an ordinance in regard to the con-
trol of dogs in New York city. (*Miller* v. *Donovan,* 85

Pac. Rep. 159; 3 Cal. App. 325; *State* v. *City of Trenton*, 38 N. J. Law, 68; *City of Brooklyn* v. *Furey*, 9 Misc. Rep. 193; *Matter of O'Connor*, 48 Barb. 258; *Flanagan* v. *Hollingsworth*, 2 How. Pr. [N. S.] 391; Endlich 'on Interp. of Stat. § 216; Dillon on Mun. Corp. [5th ed.] § 586; *Mernaugh* v. *City of Orlando*, 41 Fla. 433.)   The exercise of the police power by the health department must be reasonable, and that reasonableness must, among other things, consist in its being directed against a real danger to the public health.   This ordinance does not fulfill this requirement.   (Freund on Police Power, § 148; *Matter of Smith*, 146 N. Y. 68; *Potts* v. *Breen*, 167 Ill. 67; *People ex rel. Lodes* v. *Dept. of Health*, 51 Misc. Rep. 190; 116 App. Div. 890.)

*Frank L. Polk, Corporation Counsel* (*Terence Farley, William J. Millard* and *William H. Kehoe* of counsel), for respondent.   Regulations of the character in question are clearly within the police power.   (*Sentall* v. *N. O., etc., R. Co.*, 166 U. S. 698; *State* v. *Harriman*, 75 Me. 562; *Matter of Ackerman*, 6 Cal. App. 5; *Washington* v. *Meigs*, 1 McArthur [D. C.], 53; *State* v. *Churchill*, 15 Ida. 645; *State* v. *Smith*, 165 N. C. 628; *Citizens Rapid Transit Co.* v. *Dew*, 100 Tenn. 317; *Patton* v. *State*, 93 Ga. 111.)   If the subject of regulating the keeping of domestic animals is within the power and authority of the board of health it is authorized to legislate on that subject, and, in so legislating, the ordinances which it may enact are not limited in their application to the subject of health only.   (*Polinsky* v. *People*, 73 N. Y. 65.)   Statutes conferring powers upon the board of health should receive a liberal construction in aid of the beneficent purposes of their enactment. (*Gregory* v. *City of New York*, 40 N. Y. 273; *Gould* v. *City of Rochester*, 105 N. Y. 46.)   The passage of the ordinance was justified.   (*People* v. *Kaye*, 212 N. Y. 407; *People* v. *Frudenberg*, 155 App. Div. 199; 209 N. Y. 218;

156 People ex rel. Knoblauch *v.* Warden, etc.

[216 N. Y.] Opinion, per Collin, J. [Nov.,

*People* v. *New York Edison Co.*, 159 App. Div. 786;
*People* v. *Jones*, 164 App. Div. 894; *People* v. *Finkelstein*, 167 App. Div. 591; *Lantry* v. *Hoffman*, 55 Misc.
Rep. 261; 124 App. Div. 927; *Waldo* v. *Christman*, 72
Misc. Rep. 349; *Department of Health* v. *Sulzberger*, 78
Misc. Rep. 134.)

Collin, J. The relator was committed by a magistrate
of the city of New York to answer to the Court of Special
Sessions upon the charge of having violated a section of
the Sanitary Code enacted by the board of health of the
city, as follows: "Section 80a. No unmuzzled dog shall
be permitted, at any time, to be on any public highway
or in any public park or place in the city of New York."
The writ of habeas corpus through which her discharge
from custody was sought was dismissed by the Special
Term by an order which was affirmed by the Appellate
Division.

The relator asserts that the section was void because
the board of health had not, and the board of aldermen
alone had, the power to enact it. She bases the assertion
upon the following facts and rule for construing statutes:
The charter of the city provides: "Subject to the constitution and laws of the state, the board of aldermen shall
have power to regulate the use of streets and sidewalks
by foot passengers, animals or vehicles * * *." (§ 50.)
"Subject to the constitution and laws of the state,
the board of aldermen shall have power to * * *
regulate or forbid the keeping of dogs * * *." (§ 51.)
The sections of the charter creating and defining the
powers and duties of the board of health contain no
specific provision relating to dogs or the restraint of
them and general provisions only could be held to confer
power in those regards. An established rule in the construction of statutes is: A specific provision upon a particular subject controls general provisions for the class to
which the subject belongs. (Endlich on Interpretation of

People ex rel. Knoblauch *v.* Warden, etc.   157

1915.]                    Opinion, per Collin, J.                    [216 N. Y.]

Statutes, § 399.)   If there are two provisions in the same act, of which one is special and particular, and clearly indicates the matter in controversy, whilst the other is general and would, if standing alone, include it also, and if reading the general provision side by side with the particular one, the inclusion of that matter in the former would produce a conflict between it and the special provision, it must be taken that the latter was designed as an exception to the general provision.   (Endlich on Interpretation of Statutes, § 216.)

In the case at bar the general statutory provisions, considered by themselves, would unquestionably confer upon the board of health the power to adopt the section in question.   If the power is not within and conferred by them, it is, under the legal rule stated, because the statute specifically confers upon the board of aldermen the power to regulate or forbid the keeping of dogs.

We think the legislature did not intend by the provisions of sections 50 and 51 to preclude the board of health from adopting section 80a or such other reasonable and just regulation or ordinance in relation to dogs as the public health and safety required.   A statement of the sections of the charter, necessarily brief and epitomized, enforce two conclusions; the one, that the legislature empowered the board of health to enact and enforce regulations and ordinances, in order that the public health and comfort should be protected and promoted, in relation to very many subjects and matters over which the board of aldermen or other municipal body are given by the charter regulative power and control; the other, that the lawful regulations, ordinances and orders of the board of health are superior and paramount.

The charter empowers the board of aldermen to make ordinances and regulations in relation to, among other things, places of public amusement, the construction, repair and use of vaults, cisterns, areas, hydrants, sewers and pumps, the construction, repair, care and use of

markets, the works connected with the supplying of water, the public baths and public comfort stations (§ 49), the throwing or depositing of ashes, garbage or other filth or rubbish of any kind upon the streets, the streets, street pavements, sidewalks and gutters, the public cries, advertising noises, steam whistles and ringing bells in the streets. (§ 50.) Section 51 is: "Subject to the constitution and laws of the state, the board of aldermen shall have power to provide for the licensing and otherwise regulating the business of dirt carts, public cartmen, truckmen, hackmen, cabmen, expressmen, car-drivers and boatmen; of bootblacks; of pawnbrokers, junk-dealers, keepers of intelligence offices, dealers in second-hand articles, hawkers, peddlers, vendors and scalpers in coal freights; of menageries, circuses and common shows; of bone boiling, fat rendering and other noxious businesses; and shall have power to regulate or forbid the keeping of dogs. The board of aldermen shall also have power to regulate the rates of fare to be taken by owners or drivers of hackney coaches, carriages, motors, automobiles or other vehicles, and to compel the owners thereof to pay annual license fees. All ordinances in relation to any of the matters mentioned in this section shall be general, shall provide for the enforcement thereof in the manner specified in section forty-four of this act as amended, and shall fix the license fees to be paid, if any. All licenses shall be according to an established form, and shall be regularly numbered and duly registered as shall be prescribed by the board of aldermen."

The charter empowers the board of health to (among other things) order and enforce the repairs of buildings, houses and other structures, to regulate and control all public markets (so far as relates to the cleanliness, ventilation and drainage thereof, and to the prevention of the sale, or offering for sale, of improper articles therein), the removal of any obstruction, matter or thing in or upon the public streets, sidewalks or places which shall

be in its opinion liable to lead to results dangerous to life
and health; the prevention of accidents by which life or
health may be endangered and generally the abating of
all nuisances (§ 1171); to remove, abate, suspend, alter or
otherwise improve or purify, under expressed provisions,
any building, erection, excavation, premises, business
pursuit, matter or thing, or the sewerage, drainage or
ventilation thereof in its opinion dangerous to life or
health (§ 1176); to enter, examine and survey all grounds,
erections, vehicles, structures, apartments, buildings and
places in the city, including vessels of all kinds in the
waters, and all sewers and inspect the safety and sani-
tary conditions thereof (§ 1188); to ascertain the exist-
ence and cause the removal of and regulate certain offen-
sive trades or occupations (§ 1212); to take measures by
closing streets and other means to prevent the spread of
disease (§§ 1219, 1221); to require separate receptacles for
ashes and rubbish and for garbage and liquid substances,
and that the streets and sidewalks be kept free from
incumbrance by such receptacles, except at such times as
may be designated by the commissioner of street clean-
ing, for the collection of their contents (§ 1223); to regulate
the driving of cattle, sheep, swine, pigs or calves through
the streets and the slaughter of them, and revoke or sus-
pend the permit of any one who shall conduct the busi-
ness of slaughtering in violation of law and the rules
and regulations of the department of health (§ 1227).
The charter further invested the board of health with
all the authority, duty and powers conferred or enjoined
upon the health departments, boards of health and
sanitary officers in any of the municipal and public
corporations or parts thereof constituting the city
(§ 1168), and made it the duty of the board of health
to enforce all laws applicable to the preservation of
human life, or to the care, promotion or protection
of health; and to exercise the authority given by the
laws to enable it to discharge the duty imposed, and

to use all reasonable means for ascertaining the existence and cause of disease or peril to life or health, and for averting the same throughout the city. It declared in force, subject to amendment or annulment, the Sanitary Code, and provided: "Said board of health is hereby authorized and empowered, from time to time, to add to and to alter, amend or annul any part of the said sanitary code, and may therein publish additional provisions for the security of life and health in the city of New York, and confer additional powers on the department of health, not inconsistent with the constitution or laws of this state, and may provide for the enforcement of the said sanitary code by such fines, penalties, forfeitures, or imprisonment as may by ordinance be prescribed. The board of health may embrace in said sanitary code all matters and subjects to which, and so far as, the power and authority of said department of health extends, not limiting their application to the subject of health only." (§ 1172.) It makes it the duty of the police department "to promptly advise the department of health of all threatening dangers to human life or health, and of all matters thought to demand its attention, and to regularly report to said board of health all violations of its rules, and of sanitary ordinances, and of the health laws, and all useful sanitary information. And said last named departments shall, as far as practicable and appropriate, co-operate for the promotion of the public health and the safety of human life in the city." (§ 1202.) To each of the board of aldermen and the board of health was given the general power to preserve the public health and safety.

From our brief statement it is clear that a very large number of matters and subjects are common to the powers and authority of the board of aldermen and the board of health. The legislature did not intend or contemplate a conflicting authority or administration. Authority to the board of aldermen to construct, maintain or regulate in a certain respect or matter was not

intended to and did not bar the board of health from interfering with or exercising its power as the authorized conservator of the public health in regard to it. At the time of the enactment of the present charter, the Sanitary Code, embracing an extended number of subjects over which the board of aldermen or other municipal body had, under special provisions, authority, and based upon general statutory provisions, had been operative through nearly half a century. In 1877, Judge ANDREWS, writing for this court, said: "The Sanitary Code was first enacted pursuant to the twentieth section of chapter 74 of the Laws of 1866, and the tenth section of chapter 956 of the Laws of 1867, under the metropolitan district system. * * * The code enacted by the metropolitan board of health, so far as it was applicable to the city of New York, has been continued in force by subsequent legislation, subject to the powers vested in the present health department of the city to add to or amend the same. It now consists of 188 sections, and embraces regulations on a general variety of subjects connected with the protection of the public health. It prescribes the duties of individuals in the use and care of their property and tenements; regulates the construction, ventilation, and drainage of buildings and lands; provides securities against the spread of infectious and contagious diseases; in short, it is the permanent code of health laws, covering all the ordinary contingencies and circumstances, which require the intervention of public authority for the security of life and health." (*Health Dept. of New York City* v. *Knoll*, 70 N. Y. 530, 534. See also, *Metropolitan Board of Health* v. *Heister*, 37 N. Y. 661; *People ex rel. Lieberman* v. *Vandecarr*, 175 N. Y. 440.) The present charter extended and enlarged the powers of the board of health existing at its enactment, ratified and approved the Sanitary Code then existing and authorized the board to add to it additional provisions for the security

11

of life and health, and therein confer additional powers on the department of health not inconsistent with the constitution or laws of this state and embrace in it all matters and subjects to which, and so far as, the power and authority of said department of health extends. Under the intention of the legislature the rule of construction invoked by the appellant is not apposite here. This is true upon authority as well as upon principle. (*City of Cambridge* v. *Trelegan,* 181 Mass. 565; *Polinsky* v. *People,* 73 N. Y. 65; *Board of Health* v. *Kollman,* 156 Ky. 351; *People* v. *New York Edison Co.,* 159 App. Div. 786.)

It is not claimed that there is any illegality, constitutional or otherwise, in the statutes under which the section 80a was adopted. The question is one of construction. It is, of course, true that the board is a statutory body and its authority and powers are such only as are conferred by the statutes, but those powers are very broad — well-nigh plenary — and we think the power to enact the section was within them.

The appellant asserts that the section is, under the evidence, unreasonable. She has the right to take that position. It was not expressly authorized by specific legislative authority defining its details and mode of enforcement. It rests rather upon a legislative grant of general authority, and its reasonableness and fairness may be questioned. (*Haynes* v. *City of Cape May,* 50 N. J. L. 55; *Pittsburg, C., C. & St. L. Ry. Co.* v. *Town of Crown Point,* 146 Ind. 421.) When, however, an ordinance is within the power of the body which passed it, the presumption is that it is reasonable and just, and the judicial power to declare it void can be exercised only when, from the inherent character of the ordinance or from evidence showing its operation and effect, it is demonstrated to be otherwise. The burden of showing the unreasonableness from evidence is on the person asserting it. It cannot be said, as matter of law on the

facts before us, that the provision of the section is unreasonable or unjust. The other questions presented by the appellant do not require discussion.

The order should be affirmed.

WILLARD BARTLETT, Ch. J., CHASE, CUDDEBACK, HOGAN, SEABURY and POUND, JJ., concur.

Order affirmed.