(173 App. Div. 305)

STUBBE et al. v. ADAMSON et al.

(Supreme Court, Appellate Division, First Department. June 16, 1916.)

1. MUNICIPAL CORPORATIONS ⚡120—ORDINANCES—RATIFICATION BY LEGISLATURE.

Code of Ordinances of New York City, c. 10, in so far as it requires the installation of oil separators in garages, and was formerly a part of the

⚡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

regulations of the municipal explosives commission, which regulations became a part of the Ordinances of the City of New York under and pursuant to legislative enactment, is in effect the same as if the Legislature had enacted it.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 274–280; Dec. Dig. ☞120.]

2. CONSTITUTIONAL LAW ☞47—VALIDITY OF STATUTE—SCOPE OF INQUIRY.

Evidence cannot be received to determine the constitutionality of an act of the Legislature, unless evidence is necessary to show the application and effect of the statutory enactment from which it may appear that the statute cannot be complied with or that the expense of compliance would be out of all proportion to the public benefit, and therefore unreasonable and void.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 43–45; Dec. Dig. ☞47.]

3. MUNICIPAL CORPORATIONS ☞122(2)—ORDINANCES—VALIDITY.

Where an ordinance enacted under general express or implied powers purports to be enacted in the interest of the public health, safety, or welfare, although containing exceptions or exemptions, it is presumed to be valid, and may be declared invalid only when it plainly appears that it does not tend in any appreciable degree to that end, and that the power to legislate has been exercised arbitrarily in the enactment of an ordinance which is clearly unreasonable.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 284–286; Dec. Dig. ☞122(2).]

4. MUNICIPAL CORPORATIONS ☞122(3)—ORDINANCES—VALIDITY.

Evidence is admissible to show that an ordinance, making special regulations under general delegation of power, is unreasonable, where compliance with the ordinance is impossible, or that compliance could not affect the public health, safety, or welfare, or to show that the interference with constitutional rights would be out of all proportion to the benefit to the public.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 287; Dec. Dig. ☞122(3).]

5. MUNICIPAL CORPORATIONS ☞122(2)—ORDINANCES—JURISDICTION TO ENACT.

Where there is a controverted question of fact with respect to the jurisdiction of the local legislative body to enact an ordinance, it is presumed that the legislators have investigated the facts, and in enacting the ordinance have exercised the discretion conferred upon them in accordance with their determination, and have applied what they deemed to be the appropriate remedy.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 284–286; Dec. Dig. ☞122(2).]

6. MANDAMUS ☞10—SCOPE OF REMEDY.

As mandamus only lies to enforce a clear legal right, it will not lie to enforce a right which involves the validity of a statute or ordinance, the authority to enact which depends upon the determination of the legislative body with respect to a question of fact.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 37; Dec. Dig. ☞10.]

7. MUNICIPAL CORPORATIONS ☞63—ORDINANCES—VALIDITY.

Although, where the validity of an ordinance depends upon facts of which the court cannot take judicial notice and the uncontroverted evidence shows no basis upon which it can stand, it may be declared unreasonable and void, where a controverted question of fact is presented,

there being some evidence to sustain the legislation, it is the duty of courts to declare the ordinance valid.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 155, 1378, 1879; Dec. Dig. ☞63.]

8. MUNICIPAL CORPORATIONS ☞625—ORDINANCES—VALIDITY.

Under Code of Ordinances of the City of New York, c. 10, providing that no garage permit authorizing the storage of volatile inflammable oil shall be issued for any premises, storing more than 4 motor vehicles, which are not provided with an oil separator, trap, or other similar apparatus attached to the house drain to prevent the oils from flowing into the sewer, the expenditure of $200 required for the installation of an oil separator in the petitioners' garage is not so great, considering the dangers sought to be averted and the business to be conducted on the premises, as to justify the court in declaring the ordinance oppressive, although there may be a question with respect to the efficiency of the device required to be installed, since the validity of a statute or ordinance, or its applicability, is not to be decided upon what has been or is being done, but what may be done, and not by its effect in a particular case, but upon a consideration of its general purpose.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1378, 1379; Dec. Dig. ☞625.]

Appeal from Special Term, New York County.

Application by Fred H. Stubbe and others for writ of mandamus against Robert Adamson, Fire Commissioner of the City of New York, and others, constituting the Board of Hazardous Trades of the City of New York. From a Special Term order granting an alternative writ of mandamus, requiring defendants to pass upon the application of the petitioners, and, if found otherwise to conform to the requirements of the law, to issue to them a garage permit, irrespective of whether or not they had installed in their garage an oil separator or similar apparatus, defendants appeal. Reversed.

Argued before CLARKE, P. J., and LAUGHLIN, DOWLING, PAGE, and DAVIS, JJ.

E. Crosby Kindleberger, of New York City (Terence Farley and William J. Millard, both of New York City, on the brief), for appellants.

Charles Thaddeus Terry, of New York City (Edward Ward Mc-Mahon, of New York City, on the brief), for respondents.

LAUGHLIN, J. The purpose of this proceeding is to test the validity of the provisions of section 155 (article 11) of chapter 10 of the Code of Ordinances of the City of New York, in so far as the same require the installation of an oil separator or similar appliance as a condition precedent to the right of the owner or proprietor of a garage to obtain a permit which will enable him to conduct the garage business, for the petitioners pray that a mandamus issue requiring the appellants to pass upon their application for a garage permit, irrespective of whether or not they have complied with the requirements of said ordinance. Subsections 32 and 33 of section 1 (article 1) of chapter 10 of the Code of Ordinances define private and public garages. Section 150 (article 11) of chapter 10 provides that no person shall store any motor vehicle "containing volatile inflammable oil, except

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

159 N.Y.S.—48

in a building, shed or inclosure for which a garage permit shall have been issued." Section 153 requires that a public garage in which volatile inflammable oil is stored shall be continuously under the supervision of one or more persons duly licensed for fitness as superintendent or manager thereof. Section 155 is as follows:

"*Oil Separators.*—1. *When required.* No garage permit authorizing the storage of volatile inflammable oil shall be issued for any premises; storing more than 4 motor vehicles, which are not provided with an oil separator, trap or other similar apparatus attached to the house drain, for the purpose of preventing volatile inflammable oils from flowing into the sewer: Provided, however, that the fire commissioner may exempt from the requirements of this section a garage draining into a short sewer line.

"2. *Oil receptacle.* The oil receptacle of an oil separator shall not exceed 50 gallons' capacity, and shall be emptied as often as may be necessary to prevent the oil from overflowing; and such oils as are recovered from the separator shall be removed from the garage within 24 hours after being taken from the separator.

"3. *Sewer connection.* Each oil separator shall be connected to the house drain, and shall be so arranged as to separate all oils from the drainage of the garage.

"4. *Waste oil.* All oils spilled on the floor of a garage shall be removed by sponging or swabbing, and poured into the drain leading to the oil separator."

Section 156 provides that no garage permit, authorizing the storage of volatile inflammable oil, shall be issued for any premises not equipped with an approved storage system as therein prescribed, and regulates the manner in which oil shall be delivered to the garage; and subdivision 3 thereof provides, among other things, that:

"No * * * oil separator * * * shall be installed in a garage unless it be of a type for which a certificate of approval shall have been issued by the fire commissioner."

A violation of any of the provisions of these ordinances is punishable by fine or imprisonment, or both.

The petitioners are copartners conducting a general garage business on premises owned by them, known as Nos. 528–530 Morris avenue, borough of the Bronx, New York, on which it is alleged the garage was constructed in 1910, pursuant to plans approved by the fire commissioner of the city, who, it is also alleged, approved the storage tank for gasoline in said garage and all other appliances used therein. On the 10th day of January, 1915, the petitioners presented to and filed with the appellants an application in due form for a permit to conduct a public garage on said premises, and to keep thereon 275 gallons of gasoline, 5 barrels of lubricating oil, 1 barrel of kerosene and 75 motor vehicles. It does not appear whether or not the petitioners had a prior permit, but they admit that they require a garage permit to authorize them to continue the business, and therefore it must be assumed either that they had no permit before or that the former permit expired. On the filing of the application with them, the appellants caused an inspection of the premises to be made, and it appears that the inspector inquired whether the petitioners had installed in their garage an oil separator, and ascertained that they had not. The fire commissioner thereafter notified the petitioners that they would be required to install and use certain additional appliances, and among

others an oil separator. It appears that the fire commissioner has approved 9 different styles of oil separators which are evidently purchasable in the market and that 475 oil separators of types so approved are in use in garages in the city of New York. The petitioners failed and refused to install an oil separator, but complied with all other requirements of the fire commissioner. They allege that their garage is carefully operated under the supervision and control of one who holds a certificate for fitness therefor issued by the fire commissioner of the city of New York, and that their application for a permit has been denied solely on the ground that they have failed to install and attach to the house drain an oil separator, trap, or other similar apparatus approved by the fire commissioner of the city of New York, as required by said section 155 of the Code of Ordinances, for the purpose of preventing volatile inflammable oil from flowing into the sewer; and they further allege that they so conduct their garage that the amount of volatile inflammable oil flowing into the sewer from their premises "is a negligible quantity, and does not and cannot cause any dangerous fire condition or fire hazard, or give rise to any danger whatever of fire or explosion in the sewer," and that it is impossible for them to comply with the requirements of said section, for the reason that "there are no oil separators, traps, or other similar apparatus in existence which, when attached to the house drain of a garage, will prevent volatile inflammable oils from flowing into the sewer." The petitioners also allege that their said premises can be used only for the garage business; that they have invested therein more than $75,000; that to install an oil separator would needlessly require the expenditure by them of more than $200, and that the device, if installed, would be useless; that the ordinance, in so far as it requires the installation of an oil separator as a condition precedent to a permit being issued to them, is unreasonable, unjust, and oppressive, and deprives them of their property without due process of law; that a prosecution against them for operating a garage without a permit has been instituted by the appellants, and that they have no remedy to prevent the continuance of said prosecution to a successful termination, or to protect their rights, and to avoid damages, both with respect to their property and reputation, unless a writ of mandamus shall issue requiring the appellants to pass upon their said application and to issue a permit in disregard of the said requirements of said section, provided the appellants find that the petitioners have in all other respects complied with the conditions precedent to their right to a permit, and that in the meantime the prosecution for operating a garage without a permit be stayed. The petitioners prayed for either a peremptory or an alternative writ.

The order directs that an alternative writ issue requiring the appellants to pass upon the application and to approve it and issue a garage permit thereon "irrespective" of whether an oil separator, trap, or similar apparatus has been installed in their garage, as required by said section 155, provided the appellants find that the garage structure "is built of proper material, is properly managed, and is otherwise safe and secure." The effect, therefore, of the order is to

authorize an alternative writ for the trial of the questions presented by the petitioners with respect to the validity of the requirement of the ordinances that an oil separator or similar appliance be installed, and, in the event that the ordinance shall be found to be invalid in this respect, then that a peremptory writ be awarded to the petitioners requiring that it be disregarded by the appellants in passing upon the application for the garage permit.

The petitioners presented affidavits of garage owners, chemists, and engineers in support of their petition, which tend to show that gasoline, owing to the fact that it is expensive and that its use in washing automobiles injures the finish, forms only a very small percentage of the effluent drained from a garage into the public sewer, and the percentage is stated by one affiant as low as $1/120$ of 1 per cent.; that the gasoline so escaping into the sewer will cause neither an explosion nor a fire; that gasoline in a liquid form is not an explosive, and an explosion will take place only when there is a particular percentage of gasoline vapor in the air, and then on contact with a spark or flame, and that it is improbable that gasoline vapor would be given off from the small percentage of gasoline in solution or in suspension in the effluent from a garage, and that it is highly improbable that it would be given off in the precise proportion necessary to cause an explosion, should it come in contact with a spark or flame; that no known oil separator or other similar apparatus is practical, or will remove any material part of the gasoline from the effluent, because such separators are constructed to operate upon the principle that gasoline, being lighter than water will rise to the surface of the effluent, and that this does not occur, owing to the fact that there is ordinarily a large quantity of soap in the effluent, which forms an "emulsion" with the water and gasoline, and that the effluent is discharged with such rapidity into and through the separator that there is little opportunity for gravitation to have effect, and that the low temperature of the effluent also retards or prevents the successful operation of gravitation in this regard, and that the separators are measurably too small for attaining any practical result.

In behalf of appellants, affidavits made by the deputy fire commissioner, the chief of construction of the uniformed force of the fire department of the city of New York, the inventor of one of the oil separators approved by the fire commissioner, and an engineering chemist in the central testing laboratory of the board of estimate and apportionment of the city of New York were presented tending to show that oil separators are practical and feasible, and that there are and have been for some time in successful operation upwards of 475 oil separators in garages throughout the city of New York; that the installation of the same has prevented the discharge of large quantities of gasoline and other oils into the sewers, and that gasoline is used in the fire department garages for cleaning "parts" of automobiles; that it is a liquid of much lower gravity than water, and floats on the surface of water, and does not mix with water to any appreciable extent, and is dangerous in itself by reason of its high volatility, and owing to the vapors that are formed from it, which have a tendency to ignite and explode, and that the fumes of gasoline are dangerous to inhale.

There is also evidence presented by affidavits in behalf of appellants to the effect that, under tests made by the fire department of the effluent from one of its garages which passed through one of the oil separators approved by the fire commissioner, it was demonstrated that a large quantity of gasoline rose to the surface in the separator and remained there until removed in the ordinary operation of the device. This is uncontroverted, with the exception that the evidence presented by appellants shows that 60 per cent. of the fluid thus removed from the oil separator, during one of the tests, was gasoline; and an affidavit in behalf of respondents is to the effect that only $1^6/_{10}$ per cent. of it was gasoline.

There may be said to be a conflict in the evidence with respect to the effectiveness of the oil separators; but I think it stands uncontroverted that, if there is gasoline in the effluent to any considerable extent, part of it, at least, will be removed by the operation of the oil separator, and will thus be prevented from going into the sewer.

In Matter of Joscelyn Stable Co. v. Johnson, 157 App. Div. 779, 142 N. Y. Supp. 643, this court affirmed an order denying a peremptory or alternative writ for a garage permit under the regulation then in force, from which the ordinance now in question has been compiled or taken. The same complaint was there made with respect to the requirement that an oil separator be installed as is here presented. We then held that the regulation was presumptively and apparently valid; but in disposing of the contention that the petitioner in that case had shown by extrinsic evidence that the requirement was unreasonable, and that a question of fact was presented entitling it to an alternative writ, we said, in effect, that the affidavits read in opposition showed that there were devices in the market which were practicable and efficient, and that such affidavits were uncontroverted. The petitioners here have made out a stronger case, and it requires us to give further consideration to that point, for it is claimed that we intimated, at least, that if the facts with respect to the effectiveness of the appliance had been fairly controverted an alternative writ should have been issued.

Section 778c of the Greater New York Charter (added by chapter 899 of the Laws of 1911) provided that "all regulations" of the municipal explosives commission "approved by the fire commissioner, except such as relate exclusively to its organization, or to the duties and discipline of its officers and employés, shall constitute a chapter of the Code of Ordinances of the City, and shall be subject to amendment or repeal by the board of aldermen." The ordinances in question were originally adopted as regulations of the municipal explosives commission; thereafter, and on January 3, 1912, and by virtue of said section 778c of the Charter, they thereupon became ordinances. By virtue of chapter 495 of the Laws of 1914, amending said section 778c, the municipal explosives commission was abolished, and its powers and functions were transferred to and vested in the fire commissioner, and it was therein provided that all regulations of said commission in force immediately prior to the passage of that act, which took effect on April 23, 1914, "shall continue to constitute a chapter of the Code of Ordinances of the City, subject to amendment or repeal by the board of aldermen."

It appears that some complaint was made and facts with reference to the working of oil separators were drawn to the attention of the fire department in April, 1914, by an association known as the Merchants' Association; but, as no action resulted therefrom, an effort was made to repeal the ordinances in so far as they require the installation of oil separators, and a resolution for the repeal thereof was introduced in the board of aldermen and referred to a committee, and after public hearings the committee reported in favor of the repeal, and the resolution was adopted by a vote of 60 to 1, and after a public hearing, at which all parties interested for and against the resolution were heard, the mayor determined to veto it, and, although it received a majority vote, it failed to receive the two-thirds vote necessary to pass it over the veto.

Section 1556 of the Charter (Laws 1901, c. 466) provides as follows:

"A code or other volume containing either the ordinances or by-laws of the city published by authority of the board of aldermen shall be prima facie evidence in all courts of justice of the authenticity of such ordinances or by-laws."

Section 57 of the Charter required that the ordinances of the city shall be reduced to a code and published, and that the general ordinances in force on January 1, 1902, together with all general ordinances thereafter adopted, should be annually compiled by a committee appointed by the board of aldermen, and that said board should cause the ordinances as so compiled to be published annually. The said regulations of the municipal explosives commission, which had thus become a chapter of the Code of Ordinances, were evidently compiled pursuant to this authority, and in such compilation rearranged and the numbers of the sections changed, for it appears by the record on appeal in this court in Matter of Joscelyn Stables, supra, that the requirement for an oil separator was contained in section 376 of the regulations of the municipal explosives commission and was the same in that regard as the present section 155 of chapter 10 of the Code of Ordinances, with the exception that its application is by said section 155 limited to garages in which four or more motor vehicles are stored, which evidently was intended to exempt ordinary private garages, whereas said section 376 contained no such limitation, and that there is omitted from said section 155 the requirement of the recommendation of the municipal explosives commission, which had been abolished, as a condition precedent to the exemption from the requirement of an oil separator contained in said section 376 of the regulations of the municipal explosives commission.

The record now before the court does not specifically show what were the provisions of the ordinances on this subject when they were continued in force by the Legislature by said chapter 495 of the Laws of 1914; but it is not claimed that they were materially different from those herein quoted, and it appears generally by the petition and affidavits that the municipal explosives commission, before it was abolished, adopted certain regulations, and among others one requiring the installation of oil separators, and that said regulations "became part of the Code of Ordinances of the City of New York, and

under and pursuant to legislative enactment, such regulations were enacted and changed by the fire commissioner and the board of hazardous trades, and were thereafter re-enacted and became part of the Code of Ordinances of the City of New York," and that among them are those herein quoted. It therefore appears that the Legislature has approved of the regulation which had become an ordinance requiring the installation of oil separators in all garages, excepting those exempted by the fire commissioner, and it does not appear that the ordinance, as thus approved by the Legislature, has been repealed, although it is to be inferred, as already stated, that in the compilation thereof, or otherwise, an amendment has been made thereto by which the ordinance with respect to the installation of oil separators has become less drastic, in that it is confined to garages storing four or more motor vehicles.

[1, 2] Although the city does not pointedly argue that the ordinance, in so far as it requires the installation of oil separators, has been ratified by the Legislature, and is therefore in effect the same as if the Legislature had enacted it, I think on these facts that such is the case (City of New York v. Trustees, 85 App. Div. 355, 83 N. Y. Supp. 442, affirmed on opinion below 180 N. Y. 527, 72 N. E. 1140; Racine v. Morris, 136 App. Div. 467, 121 N. Y. Supp. 146, affirmed 201 N. Y. 249, 94 N. E. 864; People ex rel. Van Beuren & N. Y. B. P. Co. v. Miller, 161 App. Div. 138, 146 N. Y. Supp. 403; Post v. Kerwin, 133 App. Div. 404, 117 N. Y. Supp. 761); and, if that be so, manifestly it cannot be impeached by such evidence as is here presented, for the well-settled general rule is that evidence cannot be received to determine the constitutionality of an act of the Legislature (People ex rel. Kemmler v. Durston, 119 N. Y. 569, 24 N. E. 6, 7 L. R. A. 715, 16 Am. St. Rep. 859, affirmed In re Kemmler, 136 U. S. 436, 10 Sup. Ct. 930, 34 L. Ed. 519), and the only exception is where evidence is necessary to show the application and effect of the statutory enactment from which it may appear that the statute cannot be complied with, or that the expense of compliance therewith would be out of all proportion to the public benefit and advantage, and that therefore the statute would be unreasonable and void. See Fire Department of New York v. Gilmour, 149 N. Y. 453, 44 N. E. 177, 52 Am. St. Rep. 748; Health Dept. v. Rector, 145 N. Y. 32, 39 N. E. 833, 27 L. R. A. 710, 45 Am. St. Rep. 579; People v. Gillson, 109 N. Y. 389, 17 N. E. 343, 4 Am. St. Rep. 465. See, also, Fisher Co. v. Woods, 187 N. Y. 90, 79 N. E. 836, 12 L. R. A. (N. S.) 707 and People v. Ringe, 197 N. Y. 143, 90 N. E. 451, 27 L. R. A. (N. S.) 528, 18 Ann. Cas. 474.

[3] It is not claimed that the invalidity of the ordinance appears on an inspection thereof, and manifestly that could not well be claimed, for it plainly purports to be enacted in the interest of public safety and the public welfare. Nor is it claimed that there is any practical difficulty in complying with the ordinance. The only contention is that compliance therewith will require an expenditure of about $200 as shown by the petition, and from $400 to $900 as shown by affidavit, without any beneficial result, or a corresponding beneficial result, so far as the public safety and welfare are concerned. If it is to be regarded

as an enactment by the Legislature, as I think it is, then it is quite plain that it cannot be successfully attacked on the lines here proposed; but, if it is to be regarded as an ordinance merely, I am also of opinion that a case is not made out for the issuance of either a peremptory or an alternative writ of mandamus. If it is to be inferred, from the changes to which attention has been called, that in its present form it is an amendment of the former ordinance which has been adopted since the Legislature ratified the ordinance, then surely since the amendment made it less drastic, and since authority to amend was expressly conferred, it falls within the rule for testing the validity of ordinances enacted under specific express authority, as distinguished from those enacted under general authority, which is that they have precisely the same force and effect as if enacted by the Legislature. Village of Carthage v. Frederick, 122 N. Y. 268, 25 N. E. 480, 10 L. R. A. 178, 19 Am. St. Rep. 490; City of Rochester v. Simpson, 134 N. Y. 414, 31 N. E. 871; Mayor, etc., v. D. D., E. B. & B. R. R. Co., 133 N. Y. 104, 30 N. E. 563, 28 Am. St. Rep. 609; City of Buffalo v. N. Y., L. E. & W. R. R. Co., 152 N. Y. 276, 46 N. E. 496; People ex rel. O. H. C. Ass'n v. Pratt et al., 129 N. Y. 68, 29 N. E. 7. See, also, People ex rel. Knoblauch v. Warden, etc., 216 N. Y. 154–162, 110 N. E. 451.

But even with respect to ordinances enacted under general express or implied power the general rule is that, where they purport to be and are obviously enacted in the interest of the public health, safety or welfare, they are, even though they contain exceptions or exemptions, presumed to be valid, and may be declared invalid only when it plainly appears that they do not tend in any appreciable degree to that end and that the power to legislate has been exercised arbitrarily in the enactment of an ordinance which is clearly unreasonable. People v. Gillson, supra; City of Rochester v. Macauley-Fien M. Co., 199 N. Y. 207, 92 N. E. 641, 32 L. R. A. (N. S.) 554; Fifth Ave. Coach Co. v. City of New York, 194 N. Y. 19, 86 N. E. 824, 21 L. R. A. (N. S.) 744, 16 Ann. Cas. 695, affirmed 221 U. S. 467, 31 Sup. Ct. 709, 55 L. Ed. 815; People ex rel. Wineburgh Adv. Co. v. Murphy, 195 N. Y. 126, 88 N. E. 17, 21 L. R. A. (N. S.) 735; City of Rochester v. West, 164 N. Y. 510, 58 N. E. 673, 53 L. R. A. 548, 79 Am. St. Rep. 659; People v. Klinck Packing Co., 214 N. Y. 121, 108 N. E. 278; People v. Charles Schweinler Press, 214 N. Y. 395, 108 N. E. 639; Matter of McIntosh v. Johnson, 211 N. Y. 265, 105 N. E. 414, L. R. A. 1915D, 603; City of Rochester v. Gutberlett, 211 N. Y. 309, 105 N. E. 548, L. R. A. 1915B, 209, Ann. Cas. 1915C, 483; City of Buffalo v. N. Y., L. E. & W. R. R. Co., 152 N. Y. 276, 46 N. E. 496; Mayor, etc., v. D. D., E. B. & B. R. R. Co., 133 N. Y. 104, 30 N. E. 563, 28 Am. St. Rep. 609; City of Chicago v. Mandel Bros., 264 Ill. 206, 106 N. E. 181; People v. New York Edison Co., 159 App. Div. 786, 144 N. Y. Supp. 707; People ex rel. Knoblauch v. Warden, etc., 216 N. Y. 154, 110 N. E. 451; Village of Carthage v. Frederick, supra.

[4] In some cases evidence is admissible to show that an ordinance is unreasonable, and this is necessarily so where compliance with the

ordinance is impossible, or compliance could not affect the public health, safety, or welfare, or the interference with constitutional rights thereby would be out of all proportion to the benefit to be derived by the public on compliance with the ordinance. Mayor, etc., v. D. D., E. B. & B. R. R. Co., supra; People v. New York Edison Co., supra; City of Buffalo v. N. Y., L. E. & W. R. R. Co., supra; People v. N. Y. C. & H. R. R. Co., 159 App. Div. 329, 144 N. Y. Supp. 699; City of Rochester v. Macauley-Fien M. Co., supra; People v. Orange Co. R'd Cons. Co., 175 N. Y. 84, 67 N. E. 129, 65 L. R. A. 33; Wright v. Hart, 182 N. Y. 334, 75 N. E. 404, 2 L. R. A. (N. S.) 338, 3 Ann. Cas. 263; People ex rel. Knoblauch v. Warden, etc., supra; Health Dept. v. Rector, supra. And this is the general rule with respect to special regulations made under a general delegation of power. Fire Dept. v. Gilmour, 149 N. Y. 453, 44 N. E. 177, 52 Am. St. Rep. 748; People v. Kaye, 160 App. Div. 644, 146 N. Y. Supp. 398, affirmed 212 N. Y. 407, 106 N. E. 122; Health Dept. v. Rector, 145 N. Y. 32, 39 N. E. 833, 27 L. R. A. 710, 45 Am. St. Rep. 579.

[5] No case, however, has been cited, and we have found none, in which the courts have undertaken to review the action of the local legislative body depending on a controverted question of fact with respect to its jurisdiction to enact the ordinance. In such cases it is presumed that the legislators have investigated the facts and in enacting the ordinance have exercised the discretion conferred upon them by the Legislature in accordance with their determination with respect to the facts and applied what they deemed to be the appropriate remedy. People v. New York Edison Co., supra; People v. Klinck Packing Co., supra; People v. Charles Schweinler Press, supra; Fifth Ave. Coach Co. v. City of New York, supra; Mayor, etc., v. D. D., E. B. & B. R. R. Co., supra; City of Rochester v. Macauley-Fien M. Co., supra.

[6] Mandamus only lies to enforce a clear legal right, and it cannot be said that the right is clear where it involves the validity of a statute or ordinance the authority to enact which depends upon the determination of the legislative body with respect to a question of fact. See People v. Charles Schweinler Press, 214 N. Y. 396, 108 N. E. 639. I am of opinion that it would not only be an extension of established doctrine, but contrary to public policy, for the courts to undertake to test the validity of ordinances as a question of fact, where there is some evidence to sustain the enactment, for that would subject nearly every ordinance to review in the courts, and would make the validity thereof depend upon the finding of a jury on a controverted question of fact on which the enactment was made.

[7, 8] Where the validity of an ordinance depends upon facts of which the court cannot take judicial notice, and the uncontroverted evidence shows that there is no basis upon which it can stand, then it may well be declared unreasonable and void; but where a controverted question of fact is presented, there being some evidence to sustain the legislation, it is, I think, the duty of the courts to declare it valid, particularly where, as here, the question is with respect to the practicability and efficiency of a device required to be installed for

the public safety as a condition of granting a license for a business which is subject to regulation and license. In the case at bar the expenditure required for the installation of an oil separator as claimed by the petitioner is not so great, considering the dangers sought to be averted and the business to be conducted on the premises as to justify the court in declaring it oppressive. See Health Department v. Rector, etc., 145 N. Y. 32, 39 N. E. 833, 27 L. R. A. 710, 45 Am. St. Rep. 579. It is manifest that the quantity of gasoline finding its way into the effluent depends upon the care with which the business is conducted. The validity of a statute or ordinance, or its applicability, is not to be decided upon what has been or is being done, but what may be done, and not by its effect in a particular case, but upon a consideration of its general purpose and its efficacy to effect that end. City of Rochester v. West; supra; City of Rochester v. Gutberlett, supra; City of Rochester v. Macauley-Fien M. Co., supra. While a question of fact arises with respect to the efficiency of oil separators and with respect to the danger from fire and to health arising from gasoline in the public sewers, yet it appears by uncontroverted evidence that a separator, if used, will tend to minimize these dangers, and therefore I think as matter of law the ordinance must be sustained, even if it be regarded as an ordinance merely.

It follows that the order should be reversed, with $10 costs and disbursements, and motion denied, with $10 costs. All concur.

---

(95 Misc. Rep. 571)

### WARD v. JEWISH LEADER PUB. CO., Inc.

(Supreme Court, Appellate Term, First Department. June 28, 1916.)

COURTS ☞189(7)—MUNICIPAL COURTS—ANSWER—NECESSITY OF SPECIFIC DENIAL OF SIGNATURE.

    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 409, 413, 429, 458; Dec. Dig. ☞189(7).]

Appeal from Municipal Court, Borough of Manhattan, Ninth District.